No. 56,718

ELLA M. BYRD, *Appellant*, v. WESLEY MEDICAL CENTER, *Appellee.*

(699 P.2d 459)

Opinion filed May 10, 1985.

*M. Ralph Baehr*, of Nieto, Baehr & Hollander, of Wichita, argued the cause and was on the brief for appellant.

*Jerry G. Elliott*, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: When a normal, healthy child is born to a mother upon whom an unsuccessful sterilization procedure has been performed, are the costs of rearing and educating the child items of damage which are recoverable in a medical negligence action? That is the primary question posed in this proceeding.

Perhaps for clarity we should point out that we are not concerned here with the ordinary damages arising from a claim of medical malpractice in the performance of a sterilization operation—the expense of the unsuccessful operation, the pain and suffering of the patient, any medical complications caused by the unsuccessful sterilization or by the pregnancy, the costs of delivery, lost wages, or loss of consortium. Likewise, we are not concerned here with an unsuccessful sterilization proceeding followed by the birth of a mentally retarded or physically handicapped child. Our concern here is only with one item of damages claimed when it is alleged that a sterilization procedure was negligently performed, and that thereafter a normal, healthy child was born to the "sterilized" parent. Should the parent be permitted to recover as damages the full cost of rearing the child? That is the issue.

Plaintiff Ella M. Byrd underwent tubal ligation at Wesley

Medical Center (hereafter, the hospital) in Wichita. The surgery was performed by Dr. Darrel Neuschafer and Dr. Truman Grauel. One purpose of the operation was to prevent plaintiff from having any more children. The operation, however, was unsuccessful, and plaintiff later became pregnant and delivered a normal, healthy child. She then filed this action against the hospital and the surgeons, alleging that the surgery was negligently performed. She sought damages, including the cost of rearing her child to majority. At the district court level, plaintiff dismissed as against the physicians, and the hospital remains the sole defendant.

The trial court partially sustained the hospital's motion for summary judgment, ruling that plaintiff could not recover as damages the projected costs of rearing her unplanned child. The trial judge, in announcing his decision, said:

"The primary issues that result as a consequence of this action are as follows: Does plaintiff's petition state a cause of action, and if so what damages may the plaintiff recover, assuming the defendant negligently performed a sterilization procedure resulting in plaintiff's pregnancy and the birth of a normal, healthy child? I understand that these issues have never before been addressed by the appellate courts of this state. There would seem little question but that the Kansas law, as is the fact in most other states, would recognize at least some types of damage which result from an unwanted procreation caused by the negligence of another, and that there then is a valid cause of action. See *University of Arizona v. Superior Court*, 667 P.2d 1294, 1297 (Arizona, 1983); *Phillips v. United States*, 508 F. Supp. 544, 549 (United States District Court for the District of South Carolina, 1980). The real question is what is the nature of the damages which may be recovered? There are primarily three views.

"The first view is that the parents may recover only those damages which occur as a result of pregnancy and birth, and may not recover the costs of rearing the child. *Boone v. Mullendore*, 416 S. 2d 718, 721 (Alabama, 1982); *Cockrum v. Baumgartner*, 447 N.E.2d 385, 390-391 ([Illinois] 1983).

"A second view allows the parents to recover all damages and expenses mentioned above, but also includes the costs of [rearing] a child. This is often called the 'full damage rule' and has been adopted by a minority of the courts. See *Custodio v. Bauer*, [251 Cal. App. 2d 303, 325,] 59 Cal. Rptr. 463, 477 (1967).

"A third view, sometimes called the ordinary 'tort-benefit rule' allows the recovery of all damages covered in the above two views, but requires a deduction for the benefits that the parents will receive by virtue of having a normal, healthy child. *Troppi v. Scarf*, 187 N.W.2d 511, 519 (Michigan [Appeals], 1971); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169, 175-176 (Minnesota, 1977); *University of Arizona v. Superior Court*, supra.

"All three views present significant and challenging arguments that rest on a foundation of public policy. The rationale which denies damages for the rearing of a child to the age of majority appears to me to be the most persuasive. Some of

the arguments of those that hold this view are as follows: In *Boone v. Mullendore,* supra, it is stated 'The cornerstone of this denial is the idea that a normal, healthy life should not be the basis for a compensable wrong.' To permit the parents to keep their child and shift the entire costs of its upbringing to the negligent health care provider would result in a penalty wholly out of proportion to the culpability involved. See *White v. United States,* 510 F. Supp. 146, 150 (United States District Court for the District of Kansas [1981]).

"In *Boone v. Mullendore,* supra, the Court stated, 'The birth of a healthy child and the joy and pride in rearing that child are benefits on which no price tag can be placed. This joy far outweighs any economic loss that might be suffered by the parents.' See *Wilbur v. Kerr,* 628 S.W.2d 568 (Arkansas, 1982).

"As stated in *Terrell v. Garcia,* 496 S.W.2d 124 (Texas [App.], 1973), when the Texas Court addressed itself to the problems of the benefits rule, 'Irrespective of the public policy view, adoption of the benefits rule as suggested by *Troppi* would present unsurmountable problems of proof under our present standards of proof of damages. Proof could undoubtedly be offered regarding the costs of care and maintenance of a hypothetical child, although the standard of living and the extent of education to be provided such child would undoubtedly require considerable conjecture and speculation by the trier of facts.' The benefits rule would result in highly speculative assessments of damages and would cause great emotional impact not only upon the child but upon all members of the family. See *Wilbur v. Kerr,* supra. The benefits rule makes it to the parents' advantage to emphasize their problems with the child. It attacks the family unit. See *Doerr v. Villate,* 220 N.E.2d 767 (Illinois Court of Appeals, 1966). Under the benefits rule, a problem arises as to who shall control the money recovered, the parents as they see fit, or some special guardian to see that the money actually goes to the child. See *Boone v. Mullendore,* supra.

"Perhaps the most revealing rationale is given in *Wilbur v. Kerr,* supra, when it is stated at page 571 that 'We are persuaded for several reasons to follow those courts which have declined to grant damages for the expenses of [rearing] a child. It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question. Every question cannot be answered in terms of dollars and cents. We are also convinced that the damage to the child will be significant. That being an unwanted or "emotional bastard" who will someday learn that its parents did not want it, and, in fact, went to Court to force someone else to pay for its [rearing] will be harmful to that child. It will undermine society's need for a strong and healthy family relationship.'

"I hold that, as a matter of law, plaintiff may not recover damages for the costs of [rearing] her healthy and normal child to majority. However, upon a finding of negligence, a jury may consider damages for plaintiff's physical and emotional distress and costs of medical services . . . ."

From this ruling plaintiff brings this interlocutory appeal.

We agree with the trial judge that there are three views: (1) The no recovery rule: the parent may not recover the costs of rearing the child; (2) the full recovery rule: the parent may recover all costs of rearing the child; and (3) the "benefits" rule: the parent may recover the costs of rearing the child, less the

benefits the parent will receive from having a normal, healthy child.

The full recovery rule has little support. In the case of *Bowman v. Davis*, 48 Ohio St. 2d 41, 356 N.E.2d 496 (1976), cited in support of the rule, the opinion makes clear that the Ohio Supreme Court was called upon to determine, and that it decided, only two issues: that the sterilization consent form signed by the patient did not relieve the surgeon and the hospital of liability, and that a damage action based upon a negligently performed and unsuccessful sterilization procedure is not against public policy. The plaintiffs brought suit for damages, including the costs of rearing the unplanned children, twins born after the unsuccessful operation. Plaintiffs apparently recovered "rearing costs" in the lower court. The Ohio Supreme Court, in a footnote to its opinion, says:

"A third issue, that appellees' damages should be limited to the expenses of the *pregnancy* after a negligently performed sterilization, was not raised at the appellate level. To the extent that this issue is not settled in our discussion of appellant's other propositions of law, we decline to decide it." (Emphasis in original.) 48 Ohio St. 2d at 44.

The case cited by the trial court, *Custodio v. Bauer*, 251 Cal. App. 2d 303, 59 Cal. Rptr. 463 (1967), does not fully support the second view. That court said:

"On the present state of the record it cannot be ascertained to what extent plaintiffs, if they establish a breach of duty by defendants, are entitled to damages. It is clear that if successful on the issue of liability, they have established a right to more than nominal damages.

. . . .

"The propriety of further damages must be established under certain criteria as the facts may be developed." 251 Cal. App. 2d at 325-26.

The *Custodio* court thus did not decide whether or not damages for the cost of rearing the child could be recovered.

In *Cockrum v. Baumgartner*, 99 Ill. App. 3d 271, 425 N.E.2d 968 (1981), the Illinois Court of Appeals held that the mother was entitled to recover the cost of rearing the child without deduction for the "benefits of parenthood." That decision, however, was short-lived. The Illinois Supreme Court, in *Cockrum v. Baumgartner*, 95 Ill. 2d 193, 447 N.E.2d 385 (1983), reversed the Court of Appeals, affirmed the trial court, and adopted the no recovery rule that "rearing costs"—the cost of rearing a child to maturity—are not recoverable in Illinois in actions for negligent sterilization.

The most frequently cited case supporting the "benefits" rule—that the damages, including costs of rearing the child, may be recovered but that they must be reduced by the pecuniary and nonpecuniary benefits which parents will receive from their parental relationship with a normal, healthy child—is *University of Ariz. v. Superior Court*, 136 Ariz. 579, 667 P.2d 1294 (1983). The opinion discusses all three rules and the bases for them, noting that the courts which do not permit the recovery as damages of the costs of rearing the child give various reasons for adopting that view:

"Some cases base their decision on the speculative nature of the necessity to assess 'such matters as the emotional effect of a birth on siblings as well as parents, and the emotional as well as pecuniary costs of [rearing] an unplanned and, perhaps, an unwanted child in varying family environments.' *Coleman v. Garrison*, 327 A.2d at 761. . . . Another reason given for the strict view is the argument that the benefits which the parents will receive from having a normal, healthy child outweigh any loss which the parents might incur in rearing and educating that child. . . .

"A third basis for the strict rule is the argument that the 'injury is out of proportion to the culpability of the [wrongdoer]; and that the allowance of recovery would place too unreasonable a burden upon the wrongdoer, since it would likely open the way for fraudulent claims . . . .' *Beardsley v. Wierdsma*, 650 P.2d 288, 292 (Wyo. 1982). . . .

"The final basis for the strict rule is the one which gives this court greater pause than any of the others. It is well put by the Illinois Supreme Court in *Cockrum v. Baumgartner, supra*. . . .

" 'There is no purpose to restating here the panoply of reasons which have been assigned by the courts which follow the majority rule. * * * In our view, however, its basic soundness lies in the simple proposition that a parent cannot be said to have been damaged by the birth and rearing of a normal, healthy child . . . . [I]t is a matter of universally-shared emotion and sentiment that the intangible but all important, incalculable but invaluable "benefits" of parenthood far outweigh any of the mere monetary burdens involved. Speaking legally, this may be deemed conclusively presumed by the fact that a prospective parent does not abort or subsequently place the "unwanted" child for adoption. On a more practical level, the validity of the principle may be tested simply by asking any parent the purchase price for that particular youngster. Since this is the rule of experience, it should be, and we therefore hold that it is, the appropriate rule of law.

. . . .

" 'We consider that on the grounds described, the holding of a majority of jurisdictions that the costs of rearing a normal and healthy child cannot be recovered as damages to the parents is to be preferred. One can, of course, in mechanical logic reach a different conclusion, but only on the ground that human life and the state of parenthood are compensable losses. In a proper hierarchy of

values, the benefit of life should not be outweighed by the expense of supporting it. Respect for life and the rights proceeding from it are the heart of our legal system and, broader still, our civilization.' *Id.* 95 Ill. 2d at 198-201." 136 Ariz. at 582-83.

The Arizona opinion also discusses the full recovery rule. The court ultimately rejected both the no recovery and the full recovery rules and adopted the benefits rule, allowing recovery of rearing costs less the benefits of parenthood. It said:

"In our view, the preferable rule is that followed by the courts which, although permitting the trier of fact to consider both pecuniary and non-pecuniary elements of damage which pertain to the rearing and education of the child, also require it to consider the question of offsetting the pecuniary and non-pecuniary benefits which the parents will receive from the parental relationship with the child. Some may fear that adoption of such a rule will permit juries to recognize elements of damage which, because of our private philosophy or views of ethics, we, as judges, believe should not be recognized. We feel, however that the consensus of a cross-section of the community on such important issues is better and more accurately obtained from the verdict of a jury than from the decision of any particular group of that community. A jury verdict based on knowledge of all relevant circumstances is a better reflection of whether real damage exists in each case than can be obtained from use of any abstract, iron-clad rule which some courts would adopt and apply regardless of the circumstances of the particular case.

"There may be those who fear that the rule which we adopt will permit the award of damages where no real injury exists. We feel this danger is minimized by giving weight and consideration in each case to the plaintiffs' reasons for submitting to sterilization procedures. . . .

"It may be argued also that the rule which we adopt will have the unhappy effect of creating situations in which parents will testify to their feeling or opinion that the child is 'not worth' the burden of having and rearing. Such testimony could be harmful if or when the child learns of it. 'We are not convinced that the effect on the child will be significantly detrimental in every case, or even in most cases; . . . we think the parents, not the courts, are the ones who must weigh the risk.' *Hartke v. McKelway*, [707 F.2d 1544] at 1552 [n. 8 (D.C. Cir. 1983)].

. . . .

"In reaching our decision, we are influenced greatly by what we perceive to be the uniform rules of damages for all tort cases. One of the basic principles of damage law is the concept that a wrongdoer may be held liable for all damages which he may have caused and all costs which the victim may sustain as a result of the wrong. . . .

"We see no reason why ordinary damage rules, applicable to all other tort cases, should not be applicable to this situation." 136 Ariz. at 584-86.

The theory of recovery of those courts adopting the benefits rule appears to be based on Restatement (Second) of Torts § 920 (1977):

"§ 920. Benefit to Plaintiff Resulting from Defendant's Tort. When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable."

In addition to Arizona, the benefits rule has been adopted in five other states. See *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984); *Ochs v. Borrelli*, 187 Conn. 253, 445 A.2d 883 (1982); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169 (Minn. 1977); *Stills v. Gratton*, 55 Cal. App. 3d 698, 127 Cal. Rptr. 652 (1976); *Troppi v. Scarf*, 31 Mich. App. 240, 187 N.W.2d 511 (1971).

The rule that the parent may not recover rearing costs for the unplanned child is, as indicated in the Arizona case, the majority view, having been adopted in nineteen or twenty jurisdictions. One of the most recent cases adopting the rule is *McKernan v. Aasheim*, 102 Wash. 2d 411, 687 P.2d 850 (1984). In that case, as in ours, a healthy, normal child was born after an unsuccessful sterilization operation. The parents brought suit against the physician to recover damages, including the costs of rearing and educating the unplanned child. The trial court held that rearing costs could not be recovered, and the Washington Supreme Court affirmed. The court first acknowledged that the majority of courts of other jurisdictions have held that no damages may be recovered for the costs of rearing and educating a healthy, normal child born as a result of medical malpractice. The court then reviewed the reasons advanced by various courts in support of the rule. These include:

(1) A parent cannot be said to have been damaged by the birth and rearing of a normal and healthy child.

(2) Benefits of joy, companionship, and affection which a healthy child can provide outweigh the costs of rearing that child.

(3) The recovery of rearing costs would be a windfall to the parents and an unreasonable burden on the negligent health care provider, wholly out of proportion to the culpability of the physician.

(4) Recovery should be denied to protect the mental and emotional health of the child, sometimes described as an "emotional bastard," who will one day learn that he or she not only

was not wanted by his or her parents, but was reared by funds supplied by another person.

(5) Other reasons include the speculative nature of damages and the possibility of fraudulent claims.

The Washington court found unpersuasive the arguments that the benefits of parenthood always outweigh the costs of rearing a child; that the burden on health care providers would be "unreasonable"; and that some parents might bring fraudulent claims. The court then explained its reasons for adopting the nonrecovery of rearing costs rule as follows:

"Nevertheless, we are convinced that recovery of child-rearing costs must be denied on other grounds. We take as a starting point the McKernans' argument that they are entitled to recover the full cost of rearing and educating their unplanned child, without any offset for the benefits of parenthood. *See Bowman v. Davis* [48 Ohio St. 2d 41, 356 N.E.2d 496 (1976)]. This goes too far. A child is more than an economic liability. A child may provide its parents with love, companionship, a sense of achievement, and a limited form of immortality. Thus, when a parent comes before a court alleging that he or she was damaged by the unplanned birth of a child, the only logical method of determining whether such damage has occurred would be to weigh child-rearing costs against the benefits of parenthood. This, of course, is what the 'benefits' rule purports to do.

"After careful consideration, however, we have come to the conclusion that the 'benefits' rule cannot be applied in this state. Under Washington law, damages may not be recovered unless they are established with reasonable certainty. [Citation omitted]. Uncertainty as to the fact of damage is a ground for denying liability. [Citation omitted]. We believe that it is impossible to establish with reasonable certainty whether the birth of a particular healthy, normal child damaged its parents. Perhaps the costs of rearing and educating the child could be determined through use of actuarial tables or similar economic information. But whether these costs are outweighed by the emotional benefits which will be conferred by that child cannot be calculated. The child may turn out to be loving, obedient and attentive, or hostile, unruly and callous. The child may grow up to be President of the United States, or to be an infamous criminal. In short, it is impossible to tell, at an early stage in the child's life, whether its parents have sustained a net loss or net gain.

"The Delaware Supreme Court, in denying recovery of child-rearing costs, adopted a similar rationale:

'First, as to the legal concept, it is settled Delaware law that recovery may not be had for damages which are speculative or conjectural. And that applies to any attempt to measure the value of a human life against its costs. A child is born—how can it be said within the ambit of legal predictability that the monetary cost of that life is worth more than its value? We recognize that a few courts, approaching the problem in clinical terms, have applied a "balancing test" which, presumably, permits a jury to say that a life has been weighed and found wanting and thus the parents have been "damaged." We respect the efforts of other Courts to provide a remedy under the circumstances but it seems to us that that kind of judgment, if appropriate at all in an American

Court of law, might be applied at the end of a life, after it has been lived and when the facts can be identified. But, in our view, any attempt to apply it at birth can only be an exercise in prophecy, an undertaking not within the speciality of our fact-finders.'

(Footnotes and citations omitted.) *Coleman v. Garrison*, 349 A.2d 8, 12 (Del. 1975).

"We base our holding that child-rearing costs may not be recovered on yet another ground. Under the 'benefits' rule, parents would be obliged to prove their child was more trouble than it was worth. As one court noted:

'an unhandsome, colicky or otherwise "undesirable" child would provide fewer offsetting benefits, and would therefore presumably be worth more monetarily in a "wrongful birth" case. The adoption of that rule would thus engender the unseemly spectacle of parents disparaging the "value" of their children or the degree of their affection for them in open court. It is obvious, whether the conclusion is phrased in terms of "public policy," or otherwise, that such a result cannot be countenanced.'

(Citation omitted.) *Public Health Trust v. Brown*, 388 So. 2d 1084, 1086 n. 4 (Fla. Dist. Ct. App. 1980).

"Moreover, even if the 'benefits' rule were not applied, and parents allowed to sue for the full cost of rearing their unplanned child, the simple fact that the parents saw fit to allege their child as a 'damage' to them would carry with it the possibility of emotional harm to the child. We are not willing to sweep this ugly possibility under the rug by stating that the parents must be the ones to decide whether to risk the emotional well being of their unplanned child. [Citation omitted]. We therefore hold that to permit recovery of child-rearing costs would violate the public policy of this state. In so holding, we adopt the reasoning of the Arkansas Supreme Court:

'We are persuaded for several reasons to follow those courts which have declined to grant damages for the expense of [rearing] a child. It is a question which meddles with the concept of life and the stability of the family unit. Litigation cannot answer every question; every question cannot be answered in terms of dollars and cents. We are also convinced that the damage to the child will be significant; that being an unwanted or "emotional bastard," who will some day learn that its parents did not want it and, in fact, went to court to force someone else to pay for its [rearing], will be harmful to that child. It will undermine society's need for a strong and healthy family relationship. We have not become so sophisticated a society to dismiss that emotional trauma as nonsense.'

*Wilbur v. Kerr*, 275 Ark. 239, 243-44, 628 S.W.2d 568 (1982)." 102 Wash. 2d at 419-21.

Among the cases from other jurisdictions which have adopted the majority rule are these: *Boone v. Mullendore*, 416 So. 2d 718 (Ala. 1982); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del. 1975); *Fassoulas v. Ramey*, 450 So. 2d 822 (Fla. 1984); *Public Health Trust v. Brown*, 388 So. 2d 1084 (Fla. Dist. Ct. App. 1980), *rev. denied* 399 So. 2d 1140 (Fla. 1981); *Fulton-DeKalb Hosp. Auth. v.*

*Graves,* 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baum-gartner,* 95 Ill. 2d 193, 447 N.E.2d 385, *cert. denied* 464 U.S. 846, 78 L.Ed.2d 139 (1983); *Nanke v. Napier,* 346 N.W.2d 520 (Iowa 1984); *White v. United States,* 510 F. Supp. 146 (D. Kan. 1981) (interpreting Georgia law); *Schork v. Huber,* 648 S.W.2d 861 (Ky. 1983); *Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin,* 179 N.J. Super. 465, 432 A.2d 556 (1981); *O'Toole v. Greenberg,* 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Weintraub v. Brown,* 98 App. Div. 2d 339, 470 N.Y.S.2d 634 (1983; *Sorkin v. Lee,* 78 App. Div. 2d 180, 434 N.Y.S.2d 300 (1980); *Sala v. Tomlinson,* 73 App. Div. 2d 724, 422 N.Y.S.2d 506 (1979); *Mason v. Western Pennsylvania Hosp.,* 499 Pa. 484, 453 A.2d 974 (1982); *Hickman v. Myers,* 632 S.W.2d 869 (Tex. Civ. App. 1982); *Terrell v. Garcia,* 496 S.W.2d 124 (Tex. Civ. App. 1973), *cert. denied* 415 U.S. 927 (1974); *McNeal v. United States,* 689 F.2d 1200 (4th Cir. 1982) (interpreting Virginia law); *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 219 N.W.2d 242 (1974); and *Beardsley v. Wierdsma,* 650 P.2d 288 (Wyo. 1982).

Many of these courts have criticized the third or "benefits" rule, requiring the deduction of the benefits, which requires a jury to place a value on the joy and pleasure, the satisfaction and companionship, of parenthood. These items are imponderable; they have no fixed or measurable monetary value. The Texas court in *Terrell v. Garcia,* 496 S.W.2d 124, spelled out some of the inherent problems with the benefits rule. The Alabama Supreme Court, in *Boone v. Mullendore,* 416 So. 2d at 718, quotes from the *Terrell* opinion as follows:

> " 'Irrespective of the public policy view, adoption of the "benefits rule" as suggested by *Troppi,* would present unsurmountable problems of proof under our present standards for proof of damages. Proof could undoubtedly be offered regarding the cost of care and maintenance for a hypothetical child, although the standard of living and extent of education to be provided such child would undoubtedly require considerable conjecture and speculation by the trier of facts.
>
> . . . .
>
> " '. . . Nevertheless, as recognized in *Hays* and *Troppi,* the satisfaction, joy and companionship which normal parents have in rearing a child make such economic loss worthwhile. These intangible benefits, while impossible to value in dollars and cents are undoubtedly the things that make life worthwhile. Who can place a price tag on a child's smile or the parental pride in a child's achievement? Even if we consider only the economic point of view, a child is

some security for the parents' old age. Rather than attempt to value these intangible benefits, our courts have simply determined that public sentiment recognizes that these benefits to the parents outweigh their economic loss in rearing and educating a healthy, normal child.' 496 S.W.2d at 127-28." 416 So. 2d at 722.

Having considered the three views and the arguments advanced in support of each of them, we conclude that the majority rule should apply in this jurisdiction and we adopt it. In a medical malpractice action for negligent sterilization, the projected cost of rearing a normal, healthy child to majority may not be recovered.

As a matter of public policy, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable. We recognize wrongful death actions because of the great value we place on human life. Conversely, we cannot recognize actions for wrongful birth or wrongful conception of a normal, healthy child. The birth of a normal, healthy child may be one of the consequences of a negligently performed sterilization, but we hold that it is not a legal wrong for which damages should or may be awarded.

We agree with the rationale of the New York Supreme Court, Appellate Division, as expressed in *Weintraub v. Brown*, 98 App. Div. 2d 339, 348-49, 470 N.Y.S.2d 634 (1983):

"We have carefully considered the competing legal and ethical viewpoints expressed in this nettlesome area of the law, viewpoints which challenge the fundamental assumptions of our legal system and values. We conclude, as has the majority of the jurisdictions which have decided the issue, that denial of ordinary child rearing costs in wrongful pregnancy actions is to be preferred. As a matter of public policy we are unable to hold that the birth of an unwanted but otherwise healthy and normal child constitutes an injury to the child's parents and is, therefore, compensable in a medical malpractice action. Such a holding would be incompatible with contemporary views concerning one of life's most precious gifts—the birth of a normal and healthy child. We are loath to adopt a rule, the primary effect of which is to encourage, indeed reward, the parents' disparagement or outright denial of the value of their child's life. While we attempt not to adjudicate cases which come before us on the basis of emotion, sentiment, or personal preferences, a proper respect for the value of life—a cornerstone of our legal system—does not run counter to this principle. Accordingly, we affirm that part of the order under review which dismisses so much of the second cause of action as seeks to recover ordinary child rearing costs."

Many other reasons for the adoption of the majority rule are stated in the cited cases, but we need not base our opinion upon them. We hold simply that under the public policy of this state, a

parent cannot be said to be damaged by the birth of a normal, healthy child, and the parent may not recover damages because of the birth of such a child.

The judgment of the district court is affirmed.