**Norman GARRISON and Roseann Garrison, Husband and Wife and Natural Parents and Guardians of Romona Fay Garrison, Minor Child, Appellants (Plaintiffs Below),**

v.

**Hayward FOY, M.D., Appellee (Defendant Below).**

**No. 3–1284A343.**

Court of Appeals of Indiana, Third District.

Dec. 11, 1985.
Rehearing Denied Feb. 14, 1986.

Kevin L. Likes, John C. Grimm, Grimm & Grimm, P.C., Auburn, for appellants.

John F. Lyons, Ronald J. Ehinger, Barrett, Barrett & McNagny, Fort Wayne, for appellee.

HOFFMAN, Judge.

This case comes before the Court on a stipulation of facts and issues as agreed by the parties at a pre-appeal conference. The issues presented are issues of first impression in Indiana[1] and, as restated, are:

(1) whether Indiana recognizes a cause of action sounding in negligence for wrongful pregnancy; and

(2) if such a cause of action exists, the extent of damages which may flow therefrom.

■ In this particular type of case, terminology is important to identify and limit the issues. This action is denominated by the plaintiffs, an action for wrongful preg-

1. In *Spoljaric v. Pangan* (1984), Ind.App., 466 N.E.2d 37, *trans. denied,* the question of whether a negligence action would lie for an unsuccessful sterilization and the resultant birth was presented to this Court. However, *Spoljaric* was decided on the grounds of a statute of limitations issue and the negligence issue was left open for decision in a case squarely presenting the issue. *Spoljaric, supra,* 466 N.E.2d at 45–46.

nancy grounded in traditional negligence law. A wrongful pregnancy action refers to one brought by the parents of a child, which suit alleges the conception of the child was due to the negligent performance of a sterilization technique. *Fulton-De-Kalb Hosp. Authority v. Graves* (1984), 252 Ga. 441, 314 S.E.2d 653. The damages sought in such an action are those owing the parents, not the unplanned child, due to the unsuccessful medical procedures and the resulting birth of a child. *Sherlock v. Stillwater Clinic* (1977), Minn., 260 N.W.2d 169, 174–175.

Such an action must be distinguished from wrongful birth and wrongful life actions. Wrongful birth denotes an action brought by parents on their own behalf seeking damages for the birth of a deformed child after a failed abortion procedure or after failure of the physician to timely and/or properly inform the parents of a risk of genetic defect in time for the parents to make an informed decision as to terminating the pregnancy. A wrongful life action is that brought on behalf of an infant who suffers from an abnormality. Damages are sought for the failure of the physician to warn of defects or for negligent prevention or termination of conception resulting in the birth and subsequent less valuable life of the deformed individual. *Nanke v. Napier* (1984), Iowa, 346 N.W.2d 520; *Phillips v. United States* (D.S.C.1981) 508 F.Supp. 544. *See,* "Wrongful Life, Wrongful Birth and Wrongful Pregnancy: Judicial Divergence in the Birth-Related Torts," 20 Forum 207 (Winter, 1985).

In the present case we are concerned only with the existence or nonexistence of a wrongful pregnancy cause of action. The issues only concern any damages recoverable by the parents of a deformed child conceived after a vasectomy has been performed on the child's father. There is no issue as to a recovery on behalf of the child. There is no issue as to negligence in diagnosing an illness or warning against a possible defect in the child.

The stipulated facts indicate the plaintiff Norman Garrison had a vasectomy performed by defendant Foy on February 11, 1981. Approximately two weeks later, Dr. Foy performed a test on Garrison's sperm sample and informed Garrison he was in fact sterile. On July 22, 1982, plaintiff Roseann Garrison gave birth to a female child who is abnormal in that she has a complete bilateral cleft of the lip, jaw and palate. Plaintiffs then brought suit on their own behalf alleging negligence by Dr. Foy in performance of the vasectomy, failure to perform adequate and available testing to verify sterility, and failure to adequately explain the risks and benefits of the surgery. They sought damages for medical expenses incurred for the birth and future medical expenses for care of the infant; costs of raising the child to majority; and damages for mental and physical suffering and mental and emotional anguish suffered as a result of the deformity of the child. The defendant filed an Ind. Rules of Procedure, Trial Rule 12(B)(6) motion to dismiss for failure to state a cause of action recognized in Indiana. The trial court granted the defendant's motion and dismissed the cause. This appeal followed. On appeal, the Court must determine whether, considering the evidence most favorable to the plaintiff, there is substantial evidence of probative value which would sustain the material elements of the plaintiff's complaint. *Sanson v. Sanson* (1984), Ind.App., 466 N.E.2d 770.

There would seem to be no reason not to follow the course of the other states which have addressed the issue and recognize that at least some damages would flow from the unwanted pregnancy caused by the negligent performance of a sterilization procedure and/or follow-up. *Byrd v. Wesley Medical Center* (1985), 237 Kan. 215, 699 P.2d 459, 461. Such a cause of action is indistinguishable from any other medical negligence action. *Sherlock v. Stillwater Clinic, supra,* Minn., 260 N.W.2d 169, 174, *reh. denied.* The plaintiff is alleging and will have to establish the existence of the three elements of the cause of action: 1) a duty on the part of the defendant; 2) a

failure to perform that duty; and 3) damages or injuries proximately resulting to the plaintiff as a result of that failure. *Long v. Johnson* (1978), 177 Ind.App. 663, 381 N.E.2d 93, 100, *reh. denied.* Such an action merely requires the application of existing principles of medical negligence law, and failure to allow such a cause of action would immunize those in the medical field from liability for their performance in one particular area of medical practice. *See, Robak v. United States* (7th Cir.1981) 658 F.2d 471, 475 (applying Alabama law).

Having recognized the existence of this cause of action for wrongful pregnancy, the difficult issue, which has divided the jurisdictions, is the appropriate damages to be allowed the parents of the unplanned child. In the present case the Garrisons have sought medical expenses for the birth of the child and future medical expenses for the care of the child; costs of raising the child to majority; and damages for mental and physical suffering and mental and emotional anguish due to the child's defect.

From the case law established in this area of tort law, the courts have generally held that the parents may recover the expenses directly incident to the pregnancy such as expenses of the unsuccessful operation, the pain and suffering involved, any medical complications caused by the pregnancy, the costs of delivery, lost wages and loss of consortium. *Cockrum v. Baumgartner* (1983), 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385, 387, *reh. denied.* As to costs of rearing a healthy, normal child born to a "sterilized" parent, there are three views: (1) the no recovery rule: the parent may not recover the costs of rearing the child followed *in Cockrum v. Baumgartner, supra;* [2] (2) the full recovery rule: the parent may recover all costs of rearing

the child, which has little if any support; [3] and (3) the benefits rule: the parent may recover the cost of rearing the child offset by the benefits the parent will incur as a result of having the child, followed *in University of Ariz. v. Superior Court* (1983), 136 Ariz. 579, 667 P.2d 1294 and cases cited therein. *Byrd v. Wesley Medical Center, supra,* 237 Kan. 215, 699 P.2d 459, 462–463.

The reason for the adoption of one view or the other is based in each jurisdiction on policy considerations. The policy considerations most persuasive in Indiana lead to the denial of costs to rear the child.

Although the physician/defendant in the present case is not within the purview of the Medical Malpractice Act, the policy of this state as evidenced by the limitations imposed under the act, IND. CODE § 16-9.5-1-1 *et seq.,* is one of limitation of liability. Recovery of rearing costs would be inconsistent with that policy in that "[t]o permit the parents to keep their child and shift the entire costs of its upbringing to the negligent health care provider would result in a penalty wholly out of proportion to the culpability involved." *Byrd v. Wesley Medical Center, supra,* 699 P.2d at 461; *Flowers v. District of Columbia* (D.C.App.1984) 478 A.2d 1073, 1077–1078.

In addition, the adoption of the view held by many jurisdictions that the rearing costs offset by the benefit the child confers on the parents is the proper damage award is inconsistent with Indiana law as to damages in other actions. Under Indiana law, when parents bring a wrongful death action for the death of a child, the jury may not consider the deprivation of happiness, comfort and society of the child

**2.** In *Cockrum v. Baumgartner* (1981), 99 Ill. App.3d 271, 54 Ill.Dec. 751, 425 N.E.2d 968, the Illinois Court of Appeals held the parent could recover cost of rearing the child without any offset. The Supreme Court of Illinois reversed the Court of Appeals and adopted the no recovery rule. *Cockrum v. Baumgartner, supra.*

**3.** Some authority has cited *Bowman v. Davis* (1976), 48 Ohio St.2d 41, 356 N.E.2d 496 and *Custodio v. Bauer* (1967), 251 Cal.App.2d 303, 59 Cal.Rptr. 463. However, in *Bowman* the issue of whether damages should be limited to expenses of the pregnancy was not before the court and in *Custodio* the record was found to be insufficiently developed to determine exact damages.

or the occurrence of physical or mental suffering or pain by reason of loss of the child. *Boland v. Greer* (1980), Ind.App., 409 N.E.2d 1116, *trans. denied*, 422 N.E.2d 1236 (1981); IND.CODE § 34-1-1-8. Therefore consideration of these factors would not be permissible in a wrongful pregnancy action to offset the costs of rearing and the balancing would be rendered impossible.

Finally, in Indiana, the comparative fault statute requires the apportionment of fault between plaintiff and defendant. IND. CODE § 34-4-33-1 *et seq.* In the situation where a child is not wanted and a sterilization is performed but pregnancy results and is properly diagnosed, the decision or failure of the parents to terminate the pregnancy would naturally be a factor to consider in assessing the fault of the parents. Such consideration however conflicts with the state's policy of preference for life over abortion. IND.CODE § 16-10-3-4.

Therefore, having considered the public policy of this state, the conclusion is reached that the costs of rearing a child born after an unsuccessful sterilization procedure may not be recovered from the health care provider.

■ We next consider the damages sought for the suffering and expense incurred because of the child's physical defect. The cases dealing with recovery for birth defect are, by definition, within the wrongful birth characterization. They are considered in this wrongful pregnancy action because of the defect present in the Garrison child and because of a paucity of case law dealing with recovery for a defect in the wrongful pregnancy context.

In the wrongful birth cases, the courts generally have allowed the extraordinary expenses occasioned by the defect. Some courts have, in addition, allowed the parents to recover for pain and suffering and mental anguish. *Blake v. Cruz* (on rehearing, 1985) 108 Idaho 253, 698 P.2d 315, 320. However, these decisions have been based on fact situations where physicians have failed to diagnose rubella suffered by the mother during pregnancy resulting in the birth of a rubella baby suffering from severe congenital defects, *see, Blake v. Cruz, supra; Robak v. United States, supra,* 658 F.2d 471; *Procanik by Procanik v. Cillo* (1984), 97 N.J. 339, 478 A.2d 755, or where there has been a known defect in one of the parents that either has been shown to appear in the offspring of the parent or which defect is one likely to appear in the offspring, the parent sought sterilization to avoid producing defective children and a child is then born to the parent and has such defect. *See, Speck v. Finegold* (1981) 497 Pa. 77, 439 A.2d 110; *Fassoulas v. Ramey* (1984), Fla., 450 So.2d 822, *reh. denied.* We intimate no opinion as to the allowable damages in such cases, and distinguish them from the instant case where there was not a known defect producing illness during the pregnancy nor a known defect with a high probability of being present in the child.

The present case is most similar to the Texas case of *LaPoint v. Shirley* (D.C.Texas, 1976), 409 F.Supp. 118. In *LaPoint* a tubal ligation was performed by the defendant. The plaintiff thereafter became pregnant and gave birth to a child suffering from an umbilical hernia. The parents appealed the dismissal of their claim for damages for the additional costs incurred due to the defect of the child. The court distinguished the case of *Jacobs v. Theimer* (1975) Tex., 519 S.W.2d 846 where exceptional damages were awarded because of a negligent failure to diagnose the existence of rubella resulting in a severely deformed child. In *LaPoint* the court found the defect in the LaPoint child was not proximately caused by nor foreseeable from the negligently performed sterilization procedure. Therefore, the damages sought for the child's defect were not allowed. The District Court stated:

"The sequence of events which transpired in the instant case present a legally significant and distinguishing factor. The alleged negligence took place first followed by conception and then by birth of the child with the umbilical hernia. When a Pomeroy bilateral tubal ligation

is unsuccessful through negligence on the part of the physician in its performance at a time when the patient is not then pregnant, as in the instant case the only foreseeable consequence is a subsequently induced pregnancy. That the pregnancy may result in the birthing of an abnormal child is not a foreseeable consequence. As a matter of law, there can be no causal connection between the negligence of the doctor and the umbilical hernia other than that, but for the birth of the child, there would not have been an umbilical hernia. The Court finds that this remote connection does not satisfy the causation in fact element of the concept of proximate cause. In addition, it is clear that as a matter of law the umbilical hernia was not a foreseeable consequence of the alleged negligence of Doctor Shirley in the performance of the bilateral tubal ligation." *LaPoint v. Shirley, supra,* 409 F.Supp. at 121.

Indiana tort law also requires that the negligence complained of be the proximate cause of the injury. "[F]or a negligent act or omission to be a proximate cause of injury, the injury need be only a natural and probable result thereof; and the consequence be one which in the light of the circumstances should reasonably have been foreseen or anticipated." *Elder v. Fisher* (1966), 247 Ind. 598, 605, 217 N.E.2d 847, 852, *reh. denied.* There is no allegation nor basis to allege in this case that any act of the defendant increased the probability of the child being born with a defect. Nor is there an allegation or basis to allege that the defendant's acts directly caused the defects in an otherwise normal fetus. *See, Smith v. Brennan* (1960), 31 N.J. 353, 157 A.2d 497. Therefore the deformity of the child and the attendant increased costs not being a reasonably foreseeable result of an unsuccessful vasectomy under the present circumstances, the acts of the defendant cannot as a matter of law be the proximate cause of the defect, *see, Long v. Johnson, supra,* Ind.App., 381 N.E.2d 93, and damages are not available for same.

 In conclusion, this Court recognizes a cause of action in tort for wrongful pregnancy, such a cause of action being analogous to any other medical negligence cause of action. The possible damages which may be recovered are limited to those directly caused by the unsuccessful sterilization and resultant pregnancy and do not include costs of raising the child nor exceptional expenses associated with the child's defect. `

Reversed.

GARRARD, J., concurs.

STATON, P.J., concurs in result.