No. 58,565

Andrew John Bruggeman, a minor by and through his natural mother and next friend, Gina Marie Bruggeman, *Appellant*, v. Robert Neil Schimke, M.D., State of Kansas, State Board of Regents and University of Kansas Medical Center, *Appellees*.

(718 P.2d 635)

Opinion filed May 2, 1986.

*Michael E. Callen,* of Callen, Sexton & Shelor, of Kansas City, argued the cause and was on the brief for appellant.

*Carol R. Gilham,* of Blackwell Sanders Matheny Weary and Lombardi, of Kansas City, Missouri, argued the cause, and *Thomas W. Wagstaff,* of the same firm, of Kansas City, Missouri, and *Michaela N. Nicolarsen,* of the same firm, of Overland Park, were with her on the brief for appellee Robert Neil Schimke, M.D.

*Mary Beth Blake,* of Holbrook and Ellis, P.A., of Kansas City, argued the cause and was on the brief for appellees State of Kansas, State Board of Regents and University of Kansas Medical Center.

The opinion of the court was delivered by

Miller, J.: This is an action for damages for "wrongful life," brought by a three-year-old boy against a physician, Robert Neil Schimke; the State of Kansas; the State Board of Regents; and the Kansas University Medical Center. The plaintiff, Andrew John Bruggeman, appeals from an order of the district court of Wyandotte County sustaining defendants' motions to dismiss for fail-

ure to state a claim upon which relief can be granted under Kansas law, K.S.A. 60-212(b)(6).

The record in this case consists of the petition, the answers of the defendants, the motions to dismiss, and the court's ruling thereon. There has been no discovery and there is nothing to indicate that any factual matters outside the pleadings were presented to or considered by the trial court.

The petition, in substance, alleges that in 1979 plaintiff's mother gave birth to a daughter, Amy, who was born with multiple congenital anomalies. Plaintiff's mother and father then sought genetic counseling at the University of Kansas Medical Center in regard to the risk of birth defects or hereditable impairments in future children. They were advised by the defendants that Amy's condition was not due to a known chromosomal or measurable biochemical disorder. Defendants were negligent in so advising plaintiff's parents. The parents relied upon the advice and, but for the inadequate and negligent counseling, plaintiff would not have been born to experience the pain and suffering attributable to his genetic deformities. Plaintiff claims that as a result of defendants' negligence plaintiff has been caused to suffer, and will suffer in the future, injuries, pain and mental anguish as a result of being born as an impaired person, and that he has incurred and will incur in the future extraordinary expenses for medical, surgical, nursing and hospital services.

The trial court, in a comprehensive memorandum, reviewed cases from other jurisdictions and current articles in legal and medical journals on the subject. There is no Kansas case directly in point. The court concluded that a geneticist who has been consulted on the question of possible hereditary or congenital defects occurring in a second child owes a duty to his patients, which duty extends to yet unborn children of the patients, to exercise reasonable care. Whether the duty exists, the court held, was a question of law which the court decided in the affirmative. Whether the defendants had breached that duty was a question of fact, but for the purpose of ruling upon the motion the court held the allegations of the petition were sufficient. On the issue of causation, however, the court observed that the infant plaintiff does not claim that the defendants caused his defects. His claim is that they caused his birth and his life, when they knew or

should have known that he would be born with congenital defects. The court said:

"Being born is not a compensable injury. Being born with a defect is not compensable unless the defect is caused by another's negligence. This plaintiff's claim is based on his being born with a defect, and that the defendants are negligent in not preventing his birth. There is no claim that defendants' negligence caused his defect, only that the negligence caused his birth.

"The question of causation is one of fact, and under most circumstances, a question for the jury. Only where the causation question could not cause reasonable men to differ does it become a question of law.

"The court concludes that while the petition states a cause of action for the breach of a duty owed to this infant plaintiff, it fails to do so on causation and damages.

"While the averments establish for the purpose of the motion that defendants are negligent, there is no connection between that negligence and the plaintiff's defect. There is no right not to be born.

"Damages for the defect are not assessable against the defendants since their negligence is not the proximate cause of the damages, and damages for being born and achieving life itself are contrary to public policy."

Our scope of review, where the trial court has sustained a motion to dismiss, is concisely defined in *Knight v. Neodesha Police Dept.*, 5 Kan. App. 2d 472, 620 P.2d 837 (1980):

"When a motion to dismiss under K.S.A. 60-212(b)(6) raises an issue concerning the legal sufficiency of a claim, the question must be decided from the well-pleaded facts of plaintiff's petition. The motion in such case may be treated as the modern equivalent of a demurrer." Syl. ¶ 1.

"Disputed issues of fact cannot be resolved or determined on a motion to dismiss for failure of the petition to state a claim upon which relief can be granted. The question for determination is whether in the light most favorable to plaintiff, and with every doubt resolved in plaintiff's favor, the petition states any valid claim for relief. Dismissal is justified only when the allegations of the petition clearly demonstrate plaintiff does not have a claim." Syl. ¶ 2.

"In considering a motion to dismiss for failure of the petition to state a claim for relief, a court must accept the plaintiff's description of that which occurred, along with any inferences reasonably to be drawn therefrom. However, this does not mean the court is required to accept conclusory allegations on the legal effects of events the plaintiff has set out if these allegations do not reasonably follow from the description of what happened, or if these allegations are contradicted by the description itself." Syl. ¶ 3.

See also *Weil & Associates v. Urban Renewal Agency*, 206 Kan. 405, 413-14, 479 P.2d 875 (1971).

The court also stated in *Knight*:

"It is not necessary to spell out a legal theory for relief so long as an opponent is apprised of the facts that entitle the plaintiff to relief. *Febert v. Upland Mutual Ins. Co.*, 222 Kan. 197, 199, 563 P.2d 467 (1977). The court is under a duty to examine the petition to determine whether its allegations state a claim for relief

on any possible theory. *Monroe v. Darr*, 214 Kan. 426, Syl. ¶ 3, 520 P.2d 1197 (1974)." 5 Kan. App. 2d at 475.

We turn now to the issue before us, whether an action for damages for "wrongful life" should be recognized in Kansas. There are three causes of action which should first be defined and distinguished. These are "wrongful pregnancy," "wrongful birth," and "wrongful life." These are discussed and distinguished in the recent Colorado Court of Appeals case, *Continental Cas. Co. v. Empire Cas. Co.*, 713 P.2d 384 (Colo. App. 1985), where the court says:

"At the outset, wrongful life must be distinguished from other birth-related claims with which it is often confused, namely 'wrongful pregnancy,' and 'wrongful birth.' Wrongful pregnancy refers to those cases where parents of a healthy child bring a claim on their own behalf for the monetary and emotional damages they suffered as a result of giving birth to an unwanted child. Wrongful birth claims are brought by parents who claim that they would have avoided conception or terminated the pregnancy had they been properly advised of the risks of birth defects to the potential child. These parents seek recovery for their expenses in caring for the deformed child, and for their own pain and suffering. Wrongful pregnancy actions typically involve a healthy, but unwanted child, whereas wrongful birth actions usually involve planned children who are born deformed. Both actions, however, are brought by the parents on their own behalf. Comment, ' *"Wrongful Life": The Right Not to be Born,*' 54 Tul. L. Rev. 480 (1980).

"Wrongful life actions, on the other hand, are suits brought by the impaired child. The child alleges that but for the defendant doctor or health care providers' negligent advice to, or treatment of, the parents, the child would not have been born. Comment, ' *"Wrongful Life": The Right Not To Be Born,*' *supra*. The essence of the child's claim is that the defendants wrongfully deprived the parents of information which would have prevented the child's birth. *Azzolino v. Dingfelder,* 71 N. C. App. 289, 322 S.E.2d 567 (1984). In a wrongful life claim,

'The child does not allege that the physician's negligence caused the child's deformity. Rather, the claim is that the physician's negligence—his failure to adequately inform the parents of the risk—has caused the birth of the deformed child. The child argues that but for the inadequate advice, it would not have been born to experience the pain and suffering attributable to the deformity.' Comment, ' *"Wrongful Life": The Right Not To Be Born,*' *supra*." 713 P.2d at 392.

Our recent case of *Byrd v. Wesley Med. Center*, 237 Kan. 215, 699 P.2d 459 (1985), was an action by the mother of a normal, healthy child alleging that her tubal ligation surgery performed at the Wesley Medical Center was negligently done. She later became pregnant and delivered a normal, healthy child. She sought damages, including the cost of rearing her child to ma-

jority. We held that under the public policy of this state a parent cannot be said to be damaged by the birth of a normal, healthy child and, thus, the plaintiff could not recover damages because of the birth of such a child. We affirmed the district court's ruling denying recovery for the projected costs of rearing the unplanned child. The *Byrd* case fits into the definition of an action for "wrongful pregnancy."

The case now before us fits neatly within the definition of an action for "wrongful life." It is an action by the child alleging that, but for the negligence of the defendants in giving improper genetic counseling to his parents, he would not have been born to experience the pain and suffering attributable to his genetic deformities. His description of his claim parallels the definition of a wrongful life action set forth in the *Continental Cas. Co.* opinion and in the Tulane Law Review article quoted therein. The issue presented is one of first impression for this court.

The majority of American jurisdictions have refused to recognize an action for wrongful life. See *Phillips v. United States*, 508 F. Supp. 537 (D.S.C. 1980); *Gildiner v. Thomas Jefferson Univ. Hospital*, 451 F. Supp. 692 (E.D. Pa. 1978); *Smith v. United States*, 392 F. Supp. 654 (N.D. Ohio [applying Texas law] 1975); *Elliott v. Brown*, 361 So. 2d 546 (Ala. 1978); *DiNatale v. Lieberman*, 409 So. 2d 512 (Fla. Dist. App. 1982); *Moores v. Lucas*, 405 So. 2d 1022 (Fla. Dist. App. 1981); *Blake v. Cruz*, 108 Idaho 253, 698 P.2d 315 (1984); *Goldberg v. Ruskin*, 128 Ill. App. 3d 1029, 471 N.E.2d 530 (1984); *Strohmaier v. Ob and Gyn Assoc*, 122 Mich. App. 116, 332 N.W.2d 432 (1982), *appeal denied* 417 Mich. 1072 (1983); *Azzolino v. Dingfelder*, 315 N.C. 103, 337 S.E.2d 528 (1985); *Gleitman v. Cosgrove*, 49 N.J. 22, 227 A.2d 689 (1967); *Alquijay v. St. Luke's-Roosevelt Hosp. Center*, 63 N.Y.2d 978, 483 N.Y.S.2d 994, 473 N.E.2d 244 (1984); *Becker v. Schwartz*, 46 N.Y.2d 401, 413 N.Y.S.2d 895, 386 N.E.2d 807 (1978); *Stewart v. Long Is. Coll. Hosp.*, 35 App. Div. 2d 531, 313 N.Y.S.2d 502 (1970), *aff'd* 30 N.Y.2d 695, 332 N.Y.S.2d 640 (1972); *Rubin by Rubin v. Hamot Medical Center*, 329 Pa. Super. 439, 478 A.2d 869 (1984); *James G. v. Caserta*, _____ W. Va. _____, 332 S.E.2d 872 (1985); *Dumer v. St. Michael's Hospital*, 69 Wis. 2d 766, 233 N.W.2d 372 (1975); Annot., 83 A.L.R.3d 15 (and 1985 Supp.)

The courts which follow the majority rule, and which have

refused to recognize an action for wrongful life, have generally been reluctant to find that the child plaintiff has suffered a legally cognizable injury by being born impaired rather than not being born at all. The Idaho court in *Blake v. Cruz*, 108 Idaho 253, noted that the majority of states have refused to recognize the wrongful life action. The court then stated:

"This judicial reticence stems partially from the fact that the theory amounts to a repudiation of the value of human life. The contention of wrongful life plaintiffs is not that they should not have been born without defects, but rather, that they should not have been born at all. *Gleitman* [*v. Cosgrove*, 49 N.J. 22, 227 A.2d 689 (1967)], 227 A.2d at 692. The essence of such claims is that the child's very life is 'wrongful.' *Berman v. Allan* [, 80 N.J. 421, 404 A.2d 8 (1979)], 404 A.2d at 11.

"We also decline to adopt the doctrine which would recognize such a cause of action. Basic to our culture is the precept that life is precious. As a society, therefore, our laws have as their driving force the purpose of protecting, preserving and improving the quality of human existence. To recognize wrongful life as a tort would do violence to that purpose and is completely contradictory to the belief that life is precious. The fact that Dessie Blake will live in a severely disabled condition is unquestionably a tragedy; nevertheless, we agree with the New Jersey Supreme Court in that 'life—whether experienced with or without a major physical handicap—is more precious than non-life.' *Berman, supra*, at 404 A.2d at 12. Thus, because Dessie Blake has suffered no legally cognizable wrong by being born, she has no cause of action." 108 Idaho at 259-60.

The Supreme Court of Alabama, in *Elliott v. Brown*, 361 So. 2d 546, expressed its rationale as follows:

"Fundamental to the recognition of such a cause of action is the notion that the defendant has violated some legal right of plaintiff's and as a result she has suffered injury. However, a legal right not to be born is alien to the public policy of this State to protect and preserve human life. The right of women in certain cases to have abortions does not alter the policy. . . .

. . . . .

"Upon what legal foundation is the court to determine that it is better not to have been born than to be born with deformities? If the court permitted this type cause of action, then what criteria would be used to determine the degree of deformity necessary to state a claim for relief? We decline to pronounce judgment in the imponderable area of nonexistence." 361 So. 2d at 548.

The Court of Appeals of New York, in *Becker v. Schwartz*, 46 N.Y.2d 401, said:

"Whether it is better never to have been born at all than to have been born with even gross deficiencies is a mystery more properly to be left to the philosophers and the theologians. Surely the law can assert no competence to resolve the issue, particularly in view of the very nearly uniform high value which the law and mankind has placed on human life, rather than its absence. Not only is there to be found no predicate at common law or in statutory enactment for judicial

recognition of the birth of a defective child as an injury to the child; the implications of any such proposition are staggering. Would claims be honored, assuming the breach of an identifiable duty, for less than a perfect birth? And by what standard or by whom would perfection be defined?" 46 N.Y.2d at 411.

Finally, in the most recent opinion on the subject, the North Carolina Supreme Court in *Azzolino v. Dingfelder*, 315 N.C. at 109, made this concise declaration:

"[W]e conclude that life, even life with severe defects, cannot be an injury in the legal sense."

A second reason relied upon by those courts refusing to recognize a cause of action for wrongful life is the difficulty in measuring damages. In *Nelson v. Krusen*, 678 S.W.2d 918, 924 (Tex. 1984), the Supreme Court of Texas said:

"[I]n awarding damages the court must offset any special benefits to the plaintiff resulting from the negligence, *see Restatement (Second) of Torts* § 920 (1979), such a cause of action involves a weighing of life against non-life, a calculation that cannot rationally be made. *See Dumer v. St. Michael's Hospital*, 233 N.W.2d at 376. As Chief Justice Weintraub said in the landmark case of *Gleitman v. Cosgrove* [49 N.J. 22, 227 A.2d 689 (1967)], '[U]ltimately, the infant's complaint is that he would be better off not to have been born. Man, who knows nothing of death or nothingness, cannot possibly know whether this is so.' 49 N.J. 22, 227 A.2d 689, 711 (1967) (concurring and dissenting)."

In the *Becker* case, the Court of Appeals of New York, at 46 N.Y.2d at 411-12, said:

"The remedy afforded an injured party in negligence is designed to place that party in the position he would have occupied but for the negligence of the defendant. (See *Martin v. Dierck Equip. Co.*, 43 NY2d 583, 589.) Thus, the damages recoverable on behalf of an infant for wrongful life are limited to that which is necessary to restore the infant to the position he or she would have occupied were it not for the failure of the defendant to render advice to the infant's parents in a nonnegligent manner. The theoretical hurdle to an assertion of damages on behalf of an infant accruing from a defendant's negligence in such a case becomes at once apparent. The very allegations of the complaint state that had the defendant not been negligent, the infant's parents would have chosen not to conceive, or having conceived, to have terminated rather than to have carried the pregnancy to term, thereby depriving the infant plaintiff of his or her very existence. Simply put, a cause of action brought on behalf of an infant seeking recovery for wrongful life demands a calculation of damages dependent upon a comparison between the Hobson's choice of life in an impaired state and nonexistence. This comparison the law is not equipped to make. (See *Smith v United States*, 392 F Supp 654; *Stewart v Long Is. Coll. Hosp.*, 35 AD2d 531, affd 30 NY2d 695; *Gleitman v Cosgrove*, 49 NJ 22; *Jacobs v Theimer*, 519 SW2d 846 [Tex.]; *Dumer v St. Michael's Hosp.*, 69 Wis 2d 766.)"

Similarly, in *Goldberg v. Ruskin,* 128 Ill. App. 3d at 1035-36, the Illinois Court of Appeals stated:

"The primary purpose of tort law is to compensate plaintiffs for the injuries they have suffered wrongfully at the hands of others, and damages for negligence are ordinarily computed by comparing the condition plaintiff would have been in but for the tort with plaintiff's impaired condition as a result of the wrong. (*Berman v. Allen* (1979), 80 N.J. 421, 427, 404 A.2d 8, 11-12.) In a cause of action seeking recovery for wrongful life, the trier of fact would be required 'to measure the difference in value between life in an impaired condition and "the utter void of nonexistence." ' (*Berman v. Allen* (1979), 80 N.J. 421, 427, 404 A.2d 8, 12.) Such a computation is 'a task that is beyond mortals, whether judges or jurors.' *Harbeson v. Parke-Davis, Inc.* (1983), 98 Wash. 2d 460, 482, 656 P.2d 483, 496."

Four states have recognized an action for wrongful life. See *Turpin v. Sortini,* 31 Cal. 3d 220, 182 Cal. Rptr. 337, 643 P.2d 954 (1982); *Continental Cas. Co. v. Empire Cas. Co.,* 713 P.2d 384 (Colo. App. 1985); *Procanik by Procanik v. Cillo,* 97 N.J. 339, 478 A.2d 755 (1984); *Harbeson v. Parke-Davis, Inc.,* 98 Wash. 2d 460, 656 P.2d 483 (1983). The most recent of those rulings, *Continental Cas. Co.,* is not yet final, certiorari having been granted by the Colorado Supreme Court on January 13, 1986.

The leading case recognizing an action for wrongful life is *Turpin v. Sortini.* There, in considering earlier cases from other states in which recovery had been denied, the California court said:

"[S]ome courts have concluded that the plaintiff has suffered no legally cognizable injury on the ground that considerations of public policy dictate a conclusion that life—even with the most severe of impairments—is, as a matter of law, always preferable to nonlife. The decisions frequently suggest that a contrary conclusion would 'disavow' the sanctity and value of less-than-perfect human life. [Citations omitted.]" 31 Cal. 3d at 232.

However, the court went on to say:

"[I]t is hard to see how an award of damages to a severely handicapped or suffering child would 'disavow' the value of life or in any way suggest that the child is not entitled to the . . . rights and privileges accorded to all members of society.

"Moreover, while our society and our legal system unquestionably place the highest value on all human life, we do not think that it is accurate to suggest that this state's public policy establishes—as a matter of law—that under all circumstances 'impaired life' is 'preferable' to 'nonlife.' " 31 Cal. 3d at 233.

The *Turpin* court denied the child's claim for pain, suffering, or other general damages, giving as its reason (1) the inability to determine in a rational or reasonable fashion whether the plaintiff has suffered an injury in being born impaired rather than not

being born, and (2) it would be impossible to assess general damages in a fair, nonspeculative manner. These reasons, of course, closely resemble the two principal reasons upon which the majority of states have based their refusal to recognize an action for wrongful life.

The *Turpin* court reached a different conclusion, however, on the child's claim for the " 'extraordinary expenses for specialized teaching, training and hearing equipment' that [the plaintiff] will incur during her lifetime because of her deafness." 31 Cal. 3d at 237. The court also noted that in the corresponding "wrongful birth" actions, parents have been permitted to recover medical expenses incurred on behalf of the child, and the court concluded that it would be illogical to allow only the parents and not the child to recover for the costs of the child's medical care. 31 Cal. 3d at 328.

The Washington court, in *Harbeson*, and the New Jersey court, in *Procanik*, follow generally the rationale expressed in *Turpin*. The fourth case is *Continental Cas. Co. v. Empire Cas. Co.*, decided by the Colorado Court of Appeals in June 1985. That case was a declaratory judgment action to determine which insurance carriers had what coverage responsibilities for a jury verdict entered in an underlying medical malpractice action, *Peek v. Lockwood.* The citation of the *Peek* case is not given, and we do not know whether or not it is the subject of appellate review. In *Continental Cas. Co.*, the appellate court ruled that an action for wrongful life is a proper claim for relief, and that the elements necessary to sustain a recovery for the tort of wrongful life were established. 713 P.2d at 394. As we noted earlier, certiorari has been granted by the Colorado Supreme Court and its opinion has not yet been announced.

As we observed in *Byrd*, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable. In the case now before us, treating the allegations of the petition as true, the child is neither normal nor healthy; he is an impaired person, born with genetic deformities. The question is, has plaintiff suffered a legally cognizable injury by being born impaired, rather than not being born at all?

Appellant argues that recognition of the cause of action for wrongful life is a growing trend among the states. This is simply not true. Since the *Turpin* decision came down in 1982, more

courts have joined the majority, disallowing recovery, than have recognized the action.

We are convinced that an action for wrongful life should not be judicially recognized in Kansas. It has long been a fundamental principle of our law that human life is precious. Whether the person is in perfect health, in ill health, or has or does not have impairments or disabilities, the person's life is valuable, precious, and worthy of protection. A legal right not to be born—to be dead, rather than to be alive with deformities—is a theory completely contradictory to our law. We agree with the Supreme Courts of Idaho, Alabama and North Carolina, and with the Court of Appeals of New York, whose opinions we have quoted above. Further discussion would merely prolong this opinion and add nothing of value to it.

Having determined that an action for wrongful life should not be recognized in this state, we need not determine the issue of whether a duty to the parents extends to unborn children, nor do we need to determine the issue of damages.

As Chief Justice Schroeder recently observed in the unanimous opinion of this court in *Hoard v. Shawnee Mission Medical Center*, 233 Kan. 267, 285, 662 P.2d 1214 (1983):

"[D]amages do not create a right or cause of action. The 'cause of action' is the wrong done, not the measure of compensation for it, or the character of relief sought. Damages are merely a part of the remedy which the law allows for the injury resulting from a breach or wrong."

There being no recognized cause of action for wrongful life, there can be no recovery of damages based thereon. The trial court was correct in sustaining the motion to dismiss.

The judgment is affirmed.