Douglas M. MARCINIAK, and Paula J. Marciniak,
Plaintiffs-Respondents-Petitioners,

v.

Gary T. LUNDBORG, Erick Y. Hakanson, M.D.,
Ramsey Clinic Associates, P.A., Apple River Valley
Memorial Hospital, Inc. and Wisconsin Patients Com-
pensation Fund, Defendants-Appellants.

Supreme Court

*No. 88-0088. Argued October 5, 1989.—Decided January 16,
1990.*

(Also reported in 450 N.W.2d 243.)

59

For the plaintiffs-respondents-petitioners, there were briefs by *Ardell W. Skow, William H. Thorie,* and *Doar, Drill and Skow, S.C.,* Baldwin, and oral argument by *James Drill.*

For the defendants-appellants there was a brief by *Kay Nord Hunt, Thomas J. Niemiec,* and *Lommen, Nelson, Cole & Stageberg, P.A.,* Hudson, and oral argument by *Ms. Hunt.*

WILLIAM A. BABLITCH, J.   Douglas and Paula Marciniak seek review of a court of appeals' decision which barred their cause of action for costs involved in raising a normal, healthy child conceived subsequent to an allegedly negligent sterilization operation. (The issue of negligence has not yet been tried.) The issues presented to this court are whether the costs of raising the child to the age of majority or beyond are recoverable by the parents, and if so, to what extent these costs should be offset by any benefit they derive from the child. We conclude that the costs of raising the child to the age of majority may be recovered by the parents for damages caused by a negligently performed sterilization operation. We further conclude that these costs may not be offset by any benefits conferred upon the parents by virtue of the presence of the child in their lives. The

61

decision of the court of appeals is therefore reversed and the cause remanded to the trial court for further proceedings.

The facts are as follows. In 1981, Paula Marciniak, wife of Douglas Marciniak, underwent a sterilization operation to avoid having further children. At the time, they had two children, ages 8 and 7. Paula Marciniak discussed undergoing a permanent surgical sterilization with her family physician. She was referred to another physician. The surgery, a "laparoscopy with bilateral fallopian tube cautery," was performed by a third physician.

At the time of the sterilization surgery, Mrs. Marciniak was working 25 hours a week as a clerical aid for the Amery School District to assist the family financially. She worked for the district two school years prior to resigning the September before the baby was born. At the time of her resignation, Marciniak was earning $4.90 an hour.

Mrs. Marciniak testified at her deposition that she used birth control pills prior to the sterilization procedure. She chose surgical sterilization because she desired to get off the pill, and was led to believe that the surgical procedure would be permanent.

The operation was performed in 1981. In 1983, she gave birth to a child. The child was born with no physical or mental impairments. The Marciniaks' two older children were ages ten and nine when the child was born.

Mrs. Marciniak was asked at her deposition why she did not have an abortion. She replied: "I could not kill a baby." She was asked if there was anything in her religion that disapproves of an abortion, and she replied: "I am Catholic." She did not consider giving the child up for adoption: "It was my child."

Marciniak commenced the present action by filing a Submission of Controversy with the Wisconsin Patients Compensation Panel. The action was transferred to the circuit court.

Subsequently, several defendants were dismissed by stipulation and order. The remaining defendants then filed a Motion to Dismiss and/or for Summary Judgment on a number of grounds. As pertains to this appeal, the defendants sought dismissal of the Marciniaks' claim for recovery of child rearing expenses. The trial court ruled in a written decision that the costs of rearing a normal and healthy child to the age of majority are recoverable in an action based on negligent sterilization. However, the trial court also concluded that the defendants may offset the value of any benefits the Marciniaks received by virtue of the presence of the child in their lives.

The court of appeals granted leave to appeal the non-final order, and reversed the circuit court decision. *Marciniak v. Lundborg,* 147 Wis. 2d 556, 433 N.W.2d 617 (Ct. App. 1988). The court of appeals concluded that recovery was barred on the basis of the public policy considerations enunciated in *Rieck v. Medical Protective Co.,* 64 Wis. 2d 514, 219 N.W.2d 242 (1974). We granted review on February 1, 1989.

The issues presently before this court are limited to whether a cause of action exists for the Marciniaks' expenses of rearing the child to the age of majority or beyond, and if so, whether the costs may be offset by any benefits conferred by the presence of the child in their lives. These issues involve questions of law which we determine independently of the lower courts' decisions. *See Ball v. District No. 4, Area Board,* 117 Wis. 2d 529, 537, 345 N.W.2d 389 (1984).

We conclude that the costs of raising a child to the age of majority may be recovered by the parents for damages caused by a negligently performed sterilization operation. We further conclude that these costs may not be offset by the benefits conferred upon the parents by virtue of the presence of the child in their lives.

## I.

We first address the issue of whether the costs involved in raising a normal, healthy child conceived subsequent to an allegedly negligent sterilization operation are recoverable. The general rule in Wisconsin is that a person has an obligation to exercise reasonable care so as to not cause foreseeable harm to another. *See Denny v. Mertz,* 106 Wis. 2d 636, 656, 318 N.W.2d 141 (1982) (citing *A.E. Investment Corp. v. Link Builders, Inc.,* 62 Wis. 2d 479, 483–84, 214 N.W.2d 764 (1974). As restated in *Hartridge v. State Farm Mut. Auto Ins. Co.,* 86 Wis. 2d 1, 11, 271 N.W.2d 598 (1978):

> 'Otherwise expressed, the law is that if the act is one which the party ought, in the exercise of ordinary care, to have anticipated was liable to result in injury to others, then he is liable for any injury approximately resulting from it, although he could not have anticipated the particular injury which did happen. Consequences which follow in unbroken sequence, without an intervening efficient cause, from the original negligent act, are natural and proximate; and for such consequences the original wrongdoer is responsible, even though he could not have foreseen the particular results which did follow.' (quoting *Christianson v. Chicago, St. P., M.&O.R. Co.,* 67 Minn. 94, 97, 69 N.W. 640 (1896)).

However, we have also recognized in numerous cases that negligence plus an unbroken sequence of events establishing cause-in-fact does not always and necessarily lead to a determination that a defendant is liable for the plaintiff's injuries. In *Rieck,* 64 Wis. 2d at 517–18, we said:

> Even where the chain of causation is complete and direct, recovery may sometimes be denied on grounds of public policy because: (1) The injury is too remote from the negligence; or (2) the injury is too wholly out of proportion to the culpability of the negligent tort-feasor; or (3) in retrospect it appears too highly extraordinary that the negligence should have brought about the harm; or (4) because allowance of recovery would place too unreasonable a burden (in the case before us, upon physicians and obstetricians); or (5) because allowance of recovery would be too likely to open the way for fraudulent claims; or (6) allowance of recovery would enter a field that has no sensible or just stopping point. *See also Colla v. Mandella,* 1 Wis. 2d 594, 598–99, 85 N.W.2d 345 (1957), quoted and followed in *Hass v. Chicago & North Western Ry. Co.,* 48 Wis. 2d 321, 326, 179 N.W.2d 885 (1970).

This case presents us with the question of whether the normal rule of recovery in negligence cases should be followed, thereby allowing the Marciniaks to recover the cost of raising the child after proof of causal negligence, or whether public policy considerations dictate denial of recovery notwithstanding a complete and direct chain of causation from the alleged negligence to the injury. Defendants present numerous public policy considerations which they contend dictate that we deny recovery.

Defendants first argue that child rearing costs are too speculative and that it is impossible to establish with reasonable certainty the damages to the parents. We do not agree that the damages are too speculative. As noted in *Troppi v. Scarf,* 187 N.W.2d 511, 520-21 (Mich. App. 1971), similar calculations are routinely performed in countless other malpractice situations. On this same subject, the Maryland Court of Appeals has also stated that such a computation is based upon foreseeable factors relating to the maintenance, support, and educational expenses which the parents will incur until the child reaches majority. *Jones v. Malinowski,* 473 A.2d 429, 436 (Md. App. 1984). Juries are frequently called on to make far more complex damage assessments in other tort cases. There may thus actually be a less speculative calculation involved than in many other malpractice actions which are routinely allowed, such as those involving pain, suffering, and mental anguish. Population studies are readily available to provide figures for the costs of raising a child. We therefore conclude the defendants' position with respect to speculative damages is without merit.

Defendants next argue that because the costs of raising a child are so significant, allowing these costs would be wholly out of proportion to the culpability of the negligent physician. We find no merit in that contention. Admittedly, the cost of raising a child is substantial. However, the public policy of this state does not categorically immunize defendants from liability for foreseeable damages merely because the damages may be substantial. Individuals often seek sterilization precisely because the burdens of raising a child are substantial and they are not in a position to incur them. Furthermore, in recent cases where the courts have reported the amount

of the child rearing damages either requested or awarded to the plaintiffs, such amounts have not approached the awards for other serious torts. *See,* Comment, *Wrongful Pregnancy: Child Rearing Damages Deserve Full Judicial Consideration,* 8 Pace L. Rev. 313, 333–34 (1988). We therefore cannot conclude that the allowance of child raising costs would place too unreasonable a burden upon a negligent physician.

Defendants next argue that "awarding damages to the parents may cause psychological harm to the child when, at a later date, it learns of its parents' action for its wrongful birth thereby creating an 'emotional bastard.' " Again, we do not agree. The parents' suit for recovery of child rearing costs is in no reasonable sense a signal to the child that the parents consider the child an unwanted burden. The suit is for costs of raising the child, not to rid themselves of an unwanted child. They obviously want to keep the child. The love, affection, and emotional support any child needs they are prepared to give. But the love, affection, and emotional support they are prepared to give do not bring with them the economic means that are also necessary to feed, clothe, educate and otherwise raise the child. That is what this suit is about and we trust the child in the future will be well able to distinguish the two. Relieving the family of the economic costs of raising the child may well add to the emotional well-being of the entire family, including this child, rather than bring damage to it.

Defendants also argue that allowing these costs would in some way debase the sanctity of human life, stating that "(T)he courts have been loath to adopt a rule, the primary effect of which is to encourage or reward the parents' disparagement of the value of their child's life." We do not perceive that the Marciniaks in bringing this suit are in any way disparaging the value of

their child's life. They are, to the contrary, attempting to enhance it.

Defendants further argue that allowing these costs would shift the entire cost of raising the child to the physician, thereby creating a new category of surrogate parent. This suit is not an attempt to shift the responsibility of parenting from the Marciniaks to the physician. The Marciniaks are assuming that responsibility. To equate the responsibility of parenting with the responsibility of paying for the costs of child raising is illogical. This suit is their effort to give them the means of carrying out one facet of that responsibility. The payment of costs by a negligent physician does not carry with it the responsibility for raising the child. That responsibility remains with the Marciniaks.

Defendants further argue that allowing these costs would enter a field that has no sensible or just stopping point. To the extent that the defendants base this proposition on the concern that the damages would be too speculative, we have answered that argument above. Juries are frequently called on to answer damage questions that are far less predictable than those presented here. If the defendants' argument is premised on the concern for fraudulent claims, the court of appeals correctly observed that the fact of Paula Marciniak's seeking and subsequently being the subject of surgery eliminates that concern. As for other claims brought by other plaintiffs, we have confidence in our courts and our juries to distinguish the legitimate from the fraudulent.

In evaluating the public policy considerations involved, defendants urge us to recognize "that the absence of the parents taking steps to mitigate their damages by placing the child up for adoption is a relevant factor in evaluating the public policy considerations involved." This is but another way of stating the avoida-

ble consequences doctrine, which states that "one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort." Restatement (Second) of Torts, sec. 920, comment f (1979). In cases such as this, it is usually argued that because the parents can avoid the costs of raising the child by aborting the fetus or by giving the child up for adoption, the question for the courts is whether these measures are "reasonable."

We do not agree that the refusal of the Marciniaks to abort the unplanned child or give it up for adoption should be considered as a failure of the parents to mitigate their damages. The rules requiring mitigation of damages require only that reasonable measures be taken. *Troppi,* 187 N.W.2d at 519. We do not consider it reasonable to expect parents to essentially choose between the child and the cause of action. That would truly be a "Hobson's choice." In addition, the decisions concerning abortion or adoption are highly personal matters and involve deeply held moral or religious convictions. For these reasons, courts have typically rejected the argument that parents must select either abortion or adoption as a method of mitigation, and we concur. *See* Kelley, *Wrongful Life, Wrongful Birth, and Justice in Tort Law,* 1979 Wash. U.L.Q. 919, 949–50; *see also* Note, *Wrongful Conception, North Carolina's Newest Prenatal Tort Claim—Jackson v. Bumgardner,* 65 N.C.L. Rev. 1077, 1088 (1987).

The defendants argue that the present case is indistinguishable from *Rieck.* The defendants maintain that the public policy considerations reiterated by this court in the context of negligent diagnosis of pregnancy established a rule of law precluding recovery for cases involving allegations of negligent sterilization.

69

We find *Rieck* neither persuasive nor controlling on the issue before us. *Rieck* is distinguishable on its facts. The plaintiff in *Rieck* was already pregnant at the time she consulted with the physicians. The interest of the parents was the alleged inability to terminate the pregnancy due to the physician's failure to diagnose it. It was not the interest in avoiding pregnancy in the first instance, as is the case here.[1]

Moreover, the culpability in the present case differs from that in *Rieck.* The doctor's negligence in that case consisted of failing to diagnose pregnancy at seven weeks. However, the parents did not seek another medical diagnosis for another ten weeks, and at that time concluded that it was "too late" to abort the child. There was no allegation that the plaintiff informed the physician that the purpose of the examination was to have an abortion if pregnant. In the present case, the physicians were aware that the plaintiff was seeking consultation and treatment for the express purpose of permanently avoiding conception.

Defendants present no further public policy considerations in support of their position that recovery should

---

[1]To the extent that dicta in *Rieck* inferred that the benefits of child rearing always outweigh the costs as a matter of law, that inference was gone after *Dumer v. St. Michael's Hospital,* 69 Wis. 2d 766, 233 N.W.2d 372 (1975). In that case, the physician failed to diagnose rubella, foreclosing the plaintiffs from considering a eugenic abortion at any time during the pregnancy. In distinguishing *Rieck* on its facts, we held that the complaint stated a claim upon which relief could be granted. *See Dumer* at 775. Although we were not called upon in that case to decide whether the costs of rearing a child were recoverable, we recognized that the undesired burdens of parenthood may under certain circumstances give rise to an action for damages. *Id.* at 776.

be denied notwithstanding a complete and direct chain of causation from the alleged negligence to the injury. We can discern no others. In the absence of such public policy considerations, we must apply the ordinary rules of damages applicable to tort cases. One of the basic principles of traditional damages is the concept that the wrongdoer compensate those who are injured by his or her negligence. Where the purpose of the physician's actions is to prevent conception through sterilization, and the physician's actions are performed negligently, traditional principles of tort law require that the physician be held legally responsible for the consequences which have in fact occurred. We therefore conclude that the parents of a healthy child may recover the costs of raising the child from a physician who negligently performs a sterilization.

Plaintiff urges us to hold that the costs of raising the child go beyond the age of majority. We decline to do so. The parental duty of support ordinarily ceases at the age of majority. *Poehnelt v. Poehnelt,* 94 Wis. 2d 640, 655, 289 N.W.2d 296 (1980).[2] This is not a case where the unplanned child is born seriously retarded, congenitally deformed, or chronically ill, in which case the

---

[2]In *Poehnelt,* we disapproved of the trial court's order of child support for two non-minor children still in high school. We stated that the provision for continued child support for a child who has reached the age of majority is extra judicial and a nullity, in the absence of a known stipulation to the contrary. Following our deference to the legislature to alter the rule of nonsupport of emancipated children, sec. 767.25(4), Stats., was enacted. It expressly creates an exception which allows for support if the child is younger than nineteen years old and "pursuing an accredited course of instruction leading to the acquisition of a high school degree or its equivalent."

parental support obligation may extend beyond the date that the child reaches majority. *See Dumer,* 69 Wis. 2d. No authority has been presented to us in support of the proposition that the costs of raising a child under the present circumstances may go beyond the age of majority, and we can find none.

## II.

We turn now to the issue of whether the "benefit rule" should be applied to the facts of this case. The benefit rule, found in Section 920 of the Restatement (Second) of Torts, provides that a plaintiff's recovery may be reduced if the defendant's tortious conduct "has conferred a special benefit to the interest of the plaintiff that was harmed . . .." The application of this rule would require the jury to place a monetary value on the benefits that would accrue to the parents as a result of the child being with them, and offset those benefits against the interest that was harmed. The Restatement places two limitations on the application of the benefits rule. The first limitation is that the circumstances to be considered in mitigation must benefit the same interest that was harmed by the defendant's tortious act. *See,* Note, *Judicial Limitations on Damages Recoverable for the Wrongful Birth of a Healthy Infant,* 68 Va. L. Rev., 1311, 1323 (1982). The second limitation is that the benefit can offset the damage only to the extent that it is equitable. *Id.*

Section 920 of the Restatement specifically states that for a benefit to be considered in mitigation of damages it must be "a special benefit to the interest of the plaintiff that was harmed . . .." Comments to section 920 demonstrate that the drafters of the Restatement

felt that the "same interest" limitation contemplates a narrow definition of "interest":

> *Limitation to same interest.* Damages resulting from an invasion of one interest are not diminished by showing that another interest has been benefited. Thus one who has harmed another's reputation by defamatory statements cannot show in mitigation of damages that the other has been financially benefited from their publication . . . unless damages are claimed for harm to pecuniary interests . . .. Damages for pain and suffering are not diminished by showing that the earning capacity of the plaintiff has been increased by the defendant's act . . .. Damages to a husband for loss of consortium are not diminished by the fact that the husband is no longer under the expense of supporting the wife. Restatement, Second, of Torts, sec. 920, comment b.

Properly applied in the negligent sterilization context, the "same interest" rule would require that the economic damages involved in raising the child be offset by corresponding economic benefits, and that emotional harms be offset by emotional benefits, and so on. *See* Kashi, *The Case of the Unwanted Blessing: Wrongful Life,* 31 U. Miami L. Rev. 1409, 1415 (1977).

We conclude that it is not equitable to apply the benefit rule in the context of the tort of negligent sterilization. The parents made a decision not to have a child. It was precisely to avoid that "benefit" that the parents went to the physician in the first place. Any "benefits" that were conferred upon them as a result of having a new child in their lives were not asked for and were sought to be avoided. With respect to emotional benefits, potential parents in this situation are presumably well aware of the emotional benefits that might accrue to

73

them as the result of a new child in their lives. When parents make the decision to forego this opportunity for emotional enrichment, it hardly seems equitable to not only force this benefit upon them but to tell them they must pay for it as well by offsetting it against their proven emotional damages. With respect to economic benefits, the same argument prevails. In addition, any economic advantages the child might confer upon the parents are ordinarily insignificant. Accordingly, we conclude that the costs of raising the child to the age of majority may not be offset by the benefits conferred upon the parents by virtue of the presence of the child in their lives.

*By the Court.*—The decision of the court of appeals is reversed and remanded to the trial court for further proceedings.