THOMAS C. and Natalie C., Plaintiffs-Appellants,

CATHERINE C., by F. Thomas Olson, her Guardian ad Litem, Intervening Plaintiff-Appellant,

MELISSA C., Matthew C., Elizabeth C. and Michael C., by F. Thomas Olson, their Guardian ad Litem, Intervening Plaintiffs,

v.

PHYSICIANS INSURANCE COMPANY OF WISCONSIN, Wisconsin Patients Compensation Fund and Dr. Thomas A. Handrich, Defendants-Respondents.

Court of Appeals

*No. 92–3094. Submitted on briefs September 8, 1993.—Decided November 2, 1993.*

(Also reported in 509 N.W.2d 81.)

146

For the plaintiffs-appellants and intervening plaintiff-appellant the cause was submitted on the briefs of *Hall, First & Patterson, S.C.* by *Lawrence G. Albrecht* and *F. Thomas Olson* and *Jacquart & Lowe, S.C.* by *Donald J. Jacquart* and *David P. Lowe*, of Milwaukee.

For the defendants-respondents Dr. Thomas A. Handrich and Physicians Insurance Company of Wisconsin the cause was submitted on the briefs of *Peterson, Johnson & Murray, S.C.* by *Mary Lee Ratzel* and *Michael P. Crooks*, of Milwaukee.

Before Wedemeyer, P.J., Sullivan and Fine, JJ.

WEDEMEYER, P.J.   Thomas C., Natalie C. and Catherine C., plaintiffs, appeal from a non-final order granting the request of Physicians Insurance Company

of Wisconsin, Wisconsin Patients Compensation Fund and Dr. Thomas A. Handrich, defendants, for the plaintiffs "to submit to blood tests for the purposes of determining whether Catherine C. is the biological child of . . . Thomas C."

Plaintiffs present the following issue for our review: whether, in an action for damages in a negligent sterilization case brought pursuant to *Marciniak v. Lundborg*, 153 Wis. 2d 59, 450 N.W.2d 243 (1990), the allegedly negligent surgeon and his insurer are entitled to discovery in an effort to determine whether the plaintiff-father is the "biological father" of the unexpected child. We conclude that under the facts of this case, Thomas is a "parent" within the meaning of *Marciniak* and, therefore, the question of whether Thomas is the biological father of Catherine is irrelevant to the present wrongful sterilization claim. We reverse.

## I.  BACKGROUND

The essential facts in this case are not disputed. On January 13, 1989, Dr. Handrich performed a tubal ligation on Natalie. Thomas and Natalie, who had four children at the time of the operation, had decided that additional children were neither desirable nor economically feasible. Dr. Handrich informed Thomas and Natalie that the operation was successful; he had removed the right fallopian tube and, because the left fallopian tube was missing, no ligation of that tube was necessary. Natalie, however, became pregnant in the fall of 1990 and gave birth to Catherine on May 3, 1991.

Thomas and Natalie subsequently brought suit against Dr. Handrich, his insurer and the Wisconsin Patients Compensation Fund. Thomas and Natalie alleged that Dr. Handrich was negligent (1) in failing to

determine that Natalie did indeed have a left fallopian tube at the time of the sterilization operation, and (2) in failing to perform a tubal ligation thereon.[1]

During the course of discovery, the defendants learned from a review of the records prepared by Dr. Valerie Westhead, a psychiatrist who had treated Natalie, that Natalie had told Dr. Westhead that Catherine may have been conceived as the result of an affair with another man. On the basis of the information obtained from Dr. Westhead's records, the defendants requested that the trial court adjourn the trial (then scheduled for August 24, 1992) so that the question of whether Thomas had standing to maintain his action could be addressed. The trial court granted the motion to adjourn.

Shortly thereafter, defendants requested that Thomas and Natalie voluntarily submit to a blood test to "resolve the issue of Catherine's paternity." The request was refused. Defendants then filed a motion to compel Thomas, Natalie and Catherine to undergo blood testing to determine whether Catherine was "the biological child" of Thomas. The trial court granted the motion. Plaintiffs petitioned this court for a permissive appeal pursuant to sec. 808.03(2), Stats. We granted review and now reverse.

---

[1] The children of Thomas and Natalie—Melissa, Matthew, Elizabeth, Michael and Catherine—subsequently filed an intervenor's complaint alleging that they "have suffered the loss of care, society, companionship, protection, training and guidance of their mother . . . for which they are entitled to compensatory damages." This claim, however, is not at issue in the present case.

## II. DISCUSSION

In *Marciniak v. Lundborg*, 153 Wis. 2d 59, 63, 450 N.W.2d 243, 245 (1990), the plaintiffs commenced an action against a physician for the costs of raising a child to the age of majority who was conceived and born after an allegedly negligent sterilization process. Mrs. Marciniak, in an effort to avoid having further children, underwent a sterilization operation. *Id.* at 62, 450 N.W.2d at 244. At the time of the operation, the Marciniaks had two children, ages eight and seven. *Id.* Although she believed the procedure would be permanent, Mrs. Marciniak subsequently gave birth to a child. *Id.* The child was born with no mental or physical impairments. *Id.*

After noting that the general rule in Wisconsin is that a person has an obligation to exercise reasonable care so as not to cause foreseeable harm to another, the *Marciniak* court "conclude[d] that the costs of raising a child to the age of majority may be recovered by the *parents* for damages caused by a negligently performed sterilization operation." *Id.* at 64, 450 N.W.2d at 245 (emphasis added). Thus, following proof of causal negligence, "parents" are entitled to recover the costs of raising a normal, healthy child conceived pursuant to a negligent sterilization operation.[2]

---

[2] As noted recently by the supreme court:

> Tort law has generally been viewed as serving three broad social purposes: (1) as a matter of justice, tort law shifts the losses caused by a personal injury to the one at fault; (2) by placing this cost with the one in the position to prevent the injury, tort law seeks to deter unsafe behavior; and (3) to compensate the victim, tort law creates a mechanism to distribute losses widely.

*CLL Assocs. v. Arrowhead Pacific*, 174 Wis. 2d 604, 610, 497 N.W.2d 115, 117 (1993) (citation omitted). In *Marciniak*, the supreme court chose to transfer the costs of raising a child

In this case, we are called upon to consider the term "parent" as it applies to the rationale set forth in *Marciniak*. Defendants argue that if Thomas is not the biological father of Catherine then he is not a parent within the meaning of *Marciniak* and, accordingly, is not entitled to maintain an action to recover damages for the allegedly negligent sterilization. Defendants, however, present no authority for the assertion that "parent" is to be construed in such a narrow manner.

Our review of the case law and statutory authority leads us to conclude that a parent is not to be defined solely as a biological mother or father. The concept of parenting involves substantially more than the act of conception. As noted in *Niesen v. Niesen*, 38 Wis. 2d 599, 602, 157 N.W.2d 660, 662 (1968), "[a] father's duty to support his child rests upon not only moral law but legally upon the voluntary status of parenthood which the father assumed. The relationship of parent and child gives rise to certain parental rights and duties. . . ." In *Cole v. Sears, Roebuck & Co.*, 47 Wis. 2d 629, 634, 177 N.W.2d 866, 869 (1970), the supreme court explained the duties of a parent:

> The legal obligation to provide food, clothing, housing, medical and dental services deals with the necessities of health, morals and well-being with which a child must be provided, or the parents' failure in this regard may be prevented by the state.
>
> "It is the right and duty of parents under the law of nature as well as the common law and the statutes of many states to protect their children, to

pursuant to a negligent sterilization to the *negligent physician*. Consistent with the above statement in *Arrowhead*, we read *Marciniak* as allowing an individual in Thomas' position to maintain an action against an allegedly negligent physician.

care for them in sickness and in health, and to do whatever may be necessary for their care, maintenance, and preservation, including medical attendance, if necessary. An omission to do this is a public wrong which the state, under its police powers, may prevent. The child has the right to call upon the parent for the discharge of this duty, and public policy for the good of society will not permit or allow the parent to divest himself irrevocably of his obligations in this regard or to abandon them at his mere will or pleasure. . . ." Am. Jur., *Parent and Child*, p. 669, sec. 46.

Also pertinent here is the concept of "legal custody," which is defined in the statutes as:

[A] legal status created by the order of a court, which confers the right and duty to protect, train and discipline the child, and to provide food, shelter, legal services, education and ordinary medical and dental care, subject to the rights, duties and responsibilities of the guardian of the child and subject to any existing parental rights and responsibilities and the provisions of any court order.

Section 48.02(12), Stats.

In the present case, it is undisputed that Thomas has sole legal custody of Catherine as the result of a judgment of divorce in June 1992. Consequently, he has a legal duty to protect, train, discipline, feed, shelter, and provide medical and legal services for Catherine. There is no contention by defendants that Thomas has shirked this legal responsibility. More importantly, however, it is clear that Thomas has willingly taken on the responsibilities and duties that a parent would normally undertake.

In relation to the family as a whole, Thomas testified during his deposition that he was the individual

primarily responsible for the duties of the entire family during the marriage, including, but not limited to, the preparation of the meals, getting the children off to school, buying groceries, paying the bills, and balancing the checkbook. Thomas stated that he continued to be the sole caretaker of all the children following Natalie's decision to move out of the house in January of 1992. Finally, Thomas indicated that he has every intention of continually providing for all of his children as they grow to adulthood.

In relation to Catherine specifically, Thomas testified that he has provided for the health, welfare and maintenance of Catherine at all times following her birth. He bought all of her diapers and clothes, paid all of her medical expenses because the insurance did not cover these expenses,[3] and provided her with shelter. Thomas also purchased a life insurance policy which listed Catherine as a beneficiary and, against which, he plans on borrowing for Catherine's college education. Finally, Thomas noted that Catherine has always called him "Daddy." There is no doubt that Thomas has accepted the responsibilities for Catherine's protection, training, and discipline in addition to providing her with the basic necessities of life. It is equally clear that Thomas has every intention of providing Catherine with all the love and care of a parent.

---

[3] Thomas testified that coverage of Natalie's and Catherine's medical expenses, including prescriptions, was excluded from the parents health insurance policy because they had deleted that portion of the insurance covering maternity costs in an effort to lower their premiums. Believing that the sterilization operation was both permanent and successful, Thomas thought that this was a prudent course of action.

■ In conclusion, Thomas, according to the terms of the divorce decree between himself and Natalie, has a legal obligation to raise Catherine as a parent. There is no allegation that he has not complied with that order at all times relevant to this appeal. Further, Thomas has willingly undertaken all of the common law duties of a parent. Therefore, Thomas falls within the definition of "parent" as that term is used in *Marciniak*. Because the issue of whether Thomas is Catherine's "biological father" is irrelevant to the merits of this case, the trial court erred in ordering the parties to submit to blood tests to establish paternity.

*By the Court.*—Order reversed.