Kenneth R. CHAFFEE, M.D.,
Appellant–Defendant,

v.

Heather L. SESLAR, Appellee–
Plaintiff.

No. 17A03–0011–CV–418.

Court of Appeals of Indiana.

July 13, 2001.

Rehearing Denied September 5, 2001.

---

Edward L. Murphy, Jr., Heidi K. Ellison, Miller, Carson, Boxberger & Murphy, LLP, Fort Wayne, IN, Attorneys for Appellant.

John C. Grimm, Grimm & Grimm, Auburn, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

Kenneth R. Chaffee, M.D., appeals the trial court's preliminary determination in favor of Heather L. Seslar. We affirm.

### Issue [1]

Dr. Chaffee raises the following consolidated and restated issue for our review: whether the costs involved in raising a normal, healthy child conceived subsequent to an allegedly negligent sterilization procedure are recoverable.

### Facts and Procedural History

The facts reveal that on March 26, 1998, Dr. Chaffee performed an abdominal bilat-

---

1. We heard oral argument at Methodist Hospital in Indianapolis, Indiana on May 23, 2001, and we commend counsel for their capable advocacy and thank Dr. Peter Marcus and the hospital.

eral partial salpingectomy upon Seslar's request for the purpose of rendering her sterile. Thereafter, Seslar became pregnant and gave birth to a healthy child on August 5, 1999. On March 15, 2000, Seslar filed a proposed complaint for medical malpractice with the Indiana Department of Insurance as prescribed by the Medical Malpractice Act [2] alleging negligence and breach of contract on the part of Dr. Chaffee as a result of his performance of the unsuccessful sterilization procedure.

Prior to the review panel issuing its written opinion, Dr. Chaffee on June 16, 2000, filed with the Dekalb Circuit Court a Motion for Preliminary Determination pursuant to Indiana Code section 34–18–11–1. Dr. Chaffee requested that the trial court as a matter of law determine that a plaintiff could not recover in a medical malpractice suit child-rearing expenses from a healthcare provider on the basis of negligent performance of a sterilization procedure.[3] Following a hearing, the trial court on October 24, 2000, entered an order which provides in pertinent part that:

> This Court, ... hereby rules that [Seslar] may properly seek recovery of monetary damages for future costs of rearing her child including, but not limited to, medical costs and educational costs.

R. 60. This interlocutory appeal ensued.

### Discussion and Decision

Dr. Chaffee contends that child-rearing damages are not recoverable for the subsequent birth of a normal, healthy child as a result of the negligent performance of a sterilization procedure. We disagree.

2. Ind.Code §§ 34–18–1–1 et. seq.

3. Indiana Code section 34–18–11–1(a)(1) provides in pertinent part that "[a] court having jurisdiction over the subject matter and the parties to a proposed complaint filed with the commissioner under this article may, upon the filing of a copy of the proposed complaint

### I. Standard of Review

Here, Dr. Chaffee filed a Motion for Preliminary Determination with the trial court. This is a procedure unique to Medical Malpractice Act claims that permits the trial court to assume jurisdiction over threshold issues before the Medical Review Panel has acted. See Ind.Code § 34–18–11–1.. When an issue presented on appeal is a pure question of law, we review the matter de novo. State v. Moss–Dwyer, 686 N.E.2d 109, 110 (Ind.1997). "A pure question of law is one that requires neither reference to extrinsic evidence, the drawing of inferences therefrom, nor the consideration of credibility questions for its resolution by a court." Bader v. Johnson, 732 N.E.2d 1212, 1216 (Ind.2000). Because we are confronted with a pure question of law, our standard of review is de novo.

### II. Right Not to Procreate

We note initially that the United States Constitution protects the right of privacy including one's rights to family planning and birth control. The United States Supreme Court has provided that the right to choose not to have a child is at the "very heart" of a group of constitutionally protected choices, including the decisions relating to marriage, family relationships, child rearing and education. Carey v. Population Servs. Int'l, 431 U.S. 678, 685, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977). The choice whether to bear or begat a child is central to these Fourteenth Amendment privacy rights. Id. The Court has stated that "if the right of privacy

and a written motion under this chapter, do one (1) or both of the following: preliminarily determine an affirmative defense or issue of law or fact that may be preliminary determined under the Indiana Rules of Procedure...."

means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision of whether to bear or begat a child." *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

■ The United States Supreme Court has reversed convictions based upon state statutes making it a crime to use any device to prevent contraception. *See Griswold v. Connecticut*, 381 U.S. 479, 485–86, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) (reversing conviction of executive director and medical director of Planned Parenthood League as accessories for providing family planning information to married persons). The court has also held that restrictions which impede access to contraceptives unacceptably impair the right to privacy because such access is "essential to the exercise" of constitutionally protected reproductive rights. *Carey*, 431 U.S. at 685, 688–89, 97 S.Ct. 2010. In addition, the Court has provided that the right of privacy "is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." *Roe v. Wade*, 410 U.S. 113, 153, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). Therefore, individuals have a constitutional right to limit the size of their family, regardless of whether that decision is based upon a lifestyle choice, financial, health, or social concern.

### III. Claim of "Wrongful Pregnancy"

#### A. Cause of Action

■ "Wrongful pregnancy"[4] is a label attached to a cause of action alleging that but for a third party's negligence, the plaintiff-parents would not have conceived or given birth to an unplanned yet healthy child. "An action for 'wrongful conception or pregnancy' refers to a claim for damages sustained by the parents of an unexpected child alleging that the conception of the child resulted from negligent sterilization procedures or a defective contraceptive product." *Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind. 1991). The claim itself appears to be the offspring of earlier existing claims of "wrongful birth" and "wrongful life."[5]

4. The label "wrongful pregnancy" has been strictly limited to circumstances where the child is conceived and born after a negligent sterilization. "Wrongful conception" has been applied to circumstances where the negligent sterilization operation results in the conception of a fetus, but the fetus is never born because the mother either miscarries or has an abortion. The two labels have been used interchangeably. *See* Hutton Brown et al., *Legal Rights and Issues Surrounding Conception, Pregnancy, and Birth*, 39 VAND. L. REV. 597 (1986). For our purposes, the label "wrongful pregnancy" will refer to those causes of action where a negligent sterilization results in an unplanned conception, regardless whether the child was carried to term. *See, e.g., Cowe by Cowe v. Forum Group, Inc.*, 575 N.E.2d 630, 633 (Ind.1991).

5. The medical malpractice action labeled "wrongful birth" refers to claims generally described as causes of action brought by the parents of a child born with birth defects alleging that due to the negligent medical advice or testing they were precluded from making an informed decision about whether to conceive a potentially handicapped child, or in the event of a pregnancy, to terminate it. *Cowe*, 575 N.E.2d at 633. A cause of action based upon the same type of negligent conduct that seeks damages on behalf of the child rather than the parents is often referred to as "wrongful life." *Id.* A claim of "wrongful pregnancy" has been noted as differing from a claim of "wrongful birth" or "wrongful life" in two important respects. First, "wrongful pregnancy" does not rest on the claim that the mother had a right to terminate the pregnancy. Second, the "wrongful pregnancy" claim differs because it does not necessarily involve an unhealthy or genetically damaged child. *See* Dan B. Dobbs, *The Law of Torts*, 795–96 (2001).

Claims for "wrongful pregnancy" typically are predicated on the unsuccessful tubal ligation or cauterization, unsuccessful vasectomy, the failure to properly diagnose a pregnancy or perform an abortion, negligence in the insertion or removal of an IUD or dispensing contraception prescriptions, or the failure of a contraceptive pill or condom. The damages sought in a "wrongful pregnancy" action are those owing to the parents, not the unplanned healthy child, due to the unsuccessful medical procedures and the resulting birth of a child. *Garrison v. Foy*, 486 N.E.2d 5, 7 (Ind.Ct.App.1985).

■ Historically, courts denied recovery for claims of "wrongful pregnancy" based upon the "blessings doctrine," which provides that the birth of a human being is not a harm but rather a blessing. *See Sherlock v. Stillwater Clinic*, 260 N.W.2d 169, 173 (Minn.1977); *see also Christensen v. Thornby*, 192 Minn. 123, 255 N.W. 620, 621 (1934). However, the principle slowly emerged "that the birth of a child may be something less than [a] 'blessed event.' " *Custodio v. Bauer*, 251 Cal.App.2d 303, 59 Cal.Rptr. 463, 475 (Cal.Ct.App.1967). The current extensive use of birth control and sterilization procedures indicated that many individuals do not consider parenthood a "net positive circumstance." *See Burke v. Rivo*, 406 Mass. 764, 551 N.E.2d 1, 4 (1990). More than a decade ago, this court in *Garrison v. Foy* recognized that the cause of action labeled "wrongful pregnancy" existed in Indiana. Although this cause of action still exists in Indiana, we will no longer utilize the label "wrongful pregnancy" and will treat such a claim as any other medical malpractice action, as instructed by *Bader v. Johnson.*

Recently, the Indiana Supreme Court in *Bader v. Johnson* was confronted with the issue of whether a cause of action labeled "wrongful birth" existed in Indiana. In *Bader*, father and mother's first child was born with congenital birth defects. 732 N.E.2d at 1215. When mother became pregnant for a second time, the parents sought consultation with healthcare providers in order to ensure that the child was healthy. *Id.* Testing showed that the pregnancy was normal and the parent's second child was born healthy. *Id.* When mother became pregnant for the third time, the parents again sought consultation with the healthcare providers. *Id.* The healthcare providers administered an ultrasound which revealed that the fetus had a larger than expected cavity within the brain and an unusual head shape. *Id.* Due to office error, follow-up testing was not performed in a timely manner and the child was born with multiple birth defects and as a result died four months later. *Id.*

Consequently, the parents filed a proposed complaint with the Indiana Department of Insurance which later determined that the healthcare providers failed to meet the applicable standard of care. *Id.* Thereafter, parents filed suit against the healthcare providers alleging that the healthcare providers' failure to inform deprived them of the opportunity to terminate the pregnancy. *Id.* Subsequently, the healthcare providers filed a motion for summary judgment, which the trial court denied. We affirmed the judgment of the trial court. *Bader v. Johnson*, 675 N.E.2d 1119 (Ind.Ct.App.1997).

The Indiana Supreme Court stated that the injury to the parents was one of lost opportunity and ability to terminate the pregnancy and that such a cause of action existed in Indiana. *Bader*, 732 N.E.2d at 1219–20. However, the court refused to characterize the action as "wrongful birth," explaining that "[l]abeling the [parents'] cause of action as 'wrongful birth' adds nothing to the analysis, inspires confusion, and implies that the court has adopted a

new tort." *Id.* at 1216. Thus, our supreme court treated a "wrongful birth" action like any other medical malpractice case, refusing to give it special status or imply it was recognizing a new tort. *See Id.* We will follow our supreme court's lead with regard to a cause of action labeled "wrongful pregnancy." Although many jurisdictions have found this label useful, we believe that the phrase "wrongful pregnancy," like the phrase "wrongful birth," does nothing but creates confusion and implies that Indiana recognizes a prenatal tort which is separate and distinct from other medical malpractice causes of action. Therefore, we will treat Seslar's claim as any other medical malpractice case and will disregard the label or term "wrongful pregnancy."[6]

■■ Medical malpractice actions are no different from other kinds of negligence actions regarding the elements which must be proven by a plaintiff. *Id.* at 1216–17. The plaintiff must prove: (1) duty owed to plaintiff by defendant; (2) breach of duty by allowing conduct to fall below the applicable standard of care; and (3) compensable injury proximately caused by defendant's breach of duty. *Oelling v. Rao,* 593 N.E.2d 189, 190 (Ind.1992). If the plaintiff proves the elements of negligence, she is entitled to all damages naturally flowing from the healthcare provider's breach of duty. *Bader,* 732 N.E.2d at 1221. Although Dr. Chaffee concedes that Seslar is entitled to a cause of action for the negligent performance of a sterilization procedure, he challenges Seslar's assertion that a successful plaintiff may recover child-rearing expenses for such medical malpractice.

### B. Damages Available

■■ It is well established that damages are awarded to fairly and adequately compensate an injured party for his or her loss, and the proper measure of damages must be flexible enough to fit the circumstances. *Decatur County AG–Servs., Inc. v. Young,* 426 N.E.2d 644, 646 (Ind.1981). In tort actions, typically all damages directly related to the wrong arising without an intervening agency are recoverable. *Erie Ins. Co. v. Hickman by Smith,* 622 N.E.2d 515, 519 (Ind.1993). In negligence actions, the injured party is entitled to damages proximately caused by the tortfeasor's breach of duty. *Peak v. Campbell,* 578 N.E.2d 360, 361 (Ind.1991). In order for a negligent act to be a proximate cause of injury, the injury need only be a natural and probable result thereof, and the consequence be one which in light of the circumstances should reasonably have been foreseen or anticipated. *Garrison,* 486 N.E.2d at 10.

Three views have emerged regarding whether and to what extent a plaintiff may recover the costs associated with rearing an unplanned child, these being: (1) the full recovery rule [7]—the parent may recover all costs of rearing the child; (2) the benefit rule [8]—the parent may recover the

---

**6.** We note that throughout this opinion we have referred to Seslar's medical malpractice action as a claim of "wrongful pregnancy." We have done so solely for the sake of economy and descriptive purposes and should in no way be deemed as an indication that the label "wrongful pregnancy" should survive after the rendition of this opinion.

**7.** Four jurisdictions adhere to the full recovery rule. *See generally Custodio v. Bauer,* 251

Cal.App.2d 303, 59 Cal.Rptr. 463 (Cal.Ct.App. 1967); *Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 805 P.2d 603 (1991); *Zehr v. Haugen,* 318 Or. 647, 871 P.2d 1006 (1994); *Marciniak v. Lundborg,* 153 Wis.2d 59, 450 N.W.2d 243 (1990).

**8.** Five jurisdictions subscribe to the benefits rule. *See generally University of Arizona Health Scis. Ctr. v. Superior Court,* 136 Ariz. 579, 667 P.2d 1294 (1983); *Ochs v. Borrelli,*

cost of rearing the child offset by the benefits the parent will incur as a result of having the child; and (3) the no recovery rule [9]—the parent may not recover the costs of rearing the child.[10] *Id.* at 8. Sixteen years ago, this court subscribed to the no recovery rule in *Garrison v. Foy*, 486 N.E.2d 5 (Ind.Ct.App.1985).

### 1. Prior Indiana Decisions

In *Garrison*, a healthcare provider performed a vasectomy on father per his wishes to prevent him from impregnating his wife. 486 N.E.2d at 7. Two weeks later, the healthcare provider performed a test on father's sperm sample and informed him that he was sterile. *Id.* Thereafter, mother gave birth to a child with birth defects. *Id.* Consequently, mother and father brought suit on their own behalf alleging negligence on behalf of the healthcare provider in performance of the vasectomy, failure to perform adequate

and available testing to verify sterility, and failure to adequately explain the risks and benefits of surgery. *Id.* Mother and father sought damages for: (1) medical expenses incurred from the birth; (2) future medical expenses for care of the infant; (3) costs of raising the child to majority; (4) damages for mental and physical suffering and mental and physical anguish suffered as a result of the deformity of the child. *Id.*

In response, the healthcare provider filed with the trial court an Indiana Trial Rule 12(B)(6) motion to dismiss for failure to state a cause of action in Indiana, a motion which the trial court later granted. *Id.* On appeal, we held that a cause of action for "wrongful pregnancy" exists in Indiana but that "the costs of rearing a child after an ·unsuccessful sterilization procedure may not be recovered from the healthcare provider." *Id.* at 8–9. Our

187 Conn. 253, 445 A.2d 883(1982); *Jones v. Malinowski*, 299 Md. 257, 473 A.2d 429 (1984); *Burke v. Rivo*, 406 Mass. 764, 551 N.E.2d 1 (1990); *Sherlock v. Stillwater Clinic*, 260 N.W.2d 169 (Minn.1977).

**9.** Thirty-one jurisdictions subscribe to the no recovery rule regarding child-rearing expenses, limiting recovery to pregnancy and child-bearing expenses. *See generally Boone v. Mullendore*, 416 So.2d 718 (Ala.1982); *M.A. v. United States*, 951 P.2d 851 (Alaska 1998); *Wilbur v. Kerr*, 275 Ark. 239, 628 S.W.2d 568 (1982); *Coleman v. Garrison*, 349 A.2d 8 (Del.1975); *Flowers v. District of Columbia*, 478 A.2d 1073 (D.C.1984); *Fassoulas v. Ramey*, 450 So.2d 822 (Fla.1984); *Fulton–Dekalb Hosp. Auth. v. Graves*, 252 Ga. 441, 314 S.E.2d 653 (1984); *Cockrum v. Baumgartner*, 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385 (1983), *cert. denied.* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); *Nanke v. Napier*, 346 N.W.2d 520 (Iowa 1984); *Byrd v. Wesley Med. Ctr.*, 237 Kan. 215, 699 P.2d 459 (1985); *Schork v. Huber*, 648 S.W.2d 861 (Ky. 1983); *Pitre v. Opelousas Gen. Hosp.*, 530 So.2d 1151 (La.1988); *Macomber v. Dillman*, 505 A.2d 810 (Me.1986); *Rouse v. Wesley*, 196 Mich.App. 624, 494 N.W.2d 7 (1992); *Girdley*

*v. Coats*, 825 S.W.2d 295 (Mo.1992); *Hitzemann v. Adam*, 246 Neb. 201, 518 N.W.2d 102 (1994); *Kingsbury v. Smith*, 122 N.H. 237, 442 A.2d 1003 (1982); *P. v. Portadin*, 179 N.J.Super. 465, 432 A.2d 556 (1981); *O'Toole v. Greenberg*, 64 N.Y.2d 427, 488 N.Y.S.2d 143, 477 N.E.2d 445 (1985); *Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743 (1986); *Johnson v. University Hosps. of Cleveland*, 44 Ohio St.3d 49, 540 N.E.2d 1370 (1989); *Morris v. Sanchez*, 746 P.2d 184 (Okla.1987); *Mason v. Western Pa. Hosp.*, 499 Pa. 484, 453 A.2d 974 (1982); *Emerson v. Magendantz*, 689 A.2d 409 (R.I.1997); *Smith v. Gore*, 728 S.W.2d 738 (Tenn.1987); *Terrell v. Garcia*, 496 S.W.2d 124 (Tex.Civ.App.1973); *C.S. v. Nielson*, 767 P.2d 504 (Utah 1988); *Miller v. Johnson*, 231 Va. 177, 343 S.E.2d 301 (1986); *McKernan v. Aasheim*, 102 Wash.2d 411, 687 P.2d 850 (1984); *James G. v. Caserta*, 175 W.Va. 406, 332 S.E.2d 872 (1985); *Beardsley v. Wierdsma*, 650 P.2d 288 (Wyo.1982).

**10.** Two jurisdictions recognize the cause of action of "wrongful pregnancy," but do not address child-rearing damages. *See Carr v. Strode*, 79 Hawai'i 475, 904 P.2d 489 (1995); *Begin v. Richmond*, 150 Vt. 517, 555 A.2d 363 (1988).

refusal to allow a plaintiff to recover child-rearing costs was based upon Indiana public policy grounded in the limitation of damages of the Medical Malpractice Act, wrongful death actions for the death of a child, and the comparative fault statute. *Id.* at 9. We concluded that in a claim of "wrongful pregnancy:"

> The possible damages which may be recovered are limited to those directly caused by the unsuccessful sterilization and resultant pregnancy and do not include costs of raising the child nor exceptional expenses associated with the child's defect.

*Id.* at 10. Although, we note this holding, we believe that the Indiana Supreme Court's recent decision in *Bader* impliedly overruled the portion of *Garrison* which prohibits a plaintiff after an unsuccessful sterilization procedure from recovering child-rearing damages from a healthcare provider.

The parents in *Bader* brought a claim against the healthcare providers labeled "wrongful birth" seeking the following damages: (1) hospital and related medical expenses associated with the pregnancy and delivery; (2) costs associated with providing the infant with care and treatment; (3) lost income; (4) emotional distress; and (5) loss of consortium. 732 N.E.2d at 1220. As discussed previously, the Indiana Supreme Court in *Bader* decided that the parent's injury was the lost opportunity to terminate a pregnancy, and refused to extend the practice of labeling such a claim as "wrongful birth." *Id.* at 1216. After determining that the parents had brought a cognizable claim in Indiana, the court addressed the issue of available damages:

> ... we have determined that this case should be treated no differently than any other medical malpractice case. Consequently, we need not evaluate the type of damages that may be allowed in a claimed "wrongful birth" action. Rather, we look at the damages the [parents] contend they suffered and determine whether, if proven, they can be said to have been proximately caused by the Healthcare Providers' breach of duty.... Indiana subscribes to the general principle of tort law that all damages directly attributable to the wrong done are recoverable. As we have indicated, the [parents'] claimed injury in this case is the lost opportunity and ability to terminate the pregnancy. In turn, the loss may be measured by the medical and other costs directly attributable to [mother] carrying the child to term. In addition to emotional distress damages, which we discuss below, the damages [the parents] seek are consistent with those naturally flowing from Healthcare Providers' breach of duty.

*Id.* at 1220–21 (citations omitted).[11] Essentially, the Indiana Supreme Court determined that the normal rule of recovery in medical malpractice cases should be followed and that there exists no special class of damages applicable to prenatal torts.

### 2. Applicability

■ Applying *Bader* to the present case, we will utilize traditional notions of causation to determine whether child-rearing damages naturally flow from a healthcare provider's negligent performance of a sterilization procedure that results in the birth of a normal, healthy child. Assuming Seslar has proven duty and breach, in

---

**11.** We note that our supreme court held that the father had not sustained a direct impact from the healthcare providers' negligence, and thus, "[w]hether [father] can prevail on his claim for emotional distress damages depends on the evidence adduced at trial." *Bader*, 732 N.E.2d at 1222.

order to obtain damages from the healthcare provider, she must satisfy the third element of a medical malpractice action: compensable injury proximately caused by the breach. *See id.* at 1218. Seslar argues that as a result of the healthcare provider's negligent performance of the abdominal bilateral partial salpingectomy, she became pregnant and conceived a normal, healthy child. According to Seslar, she underwent the sterilization procedure to specifically avoid the conception of *any* child, not just a child with birth defects or abnormalities.

▮▮▮▮ An indispensable element of a negligence claim is that the act complained of be the proximate cause of the plaintiff's injuries. *Oelling,* 593 N.E.2d at 190. A negligent act is the proximate cause of the injury if the injury is a natural and probable consequence, which in light of the circumstances, should have been foreseen or anticipated. *Havert v. Caldwell,* 452 N.E.2d 154, 158 (Ind.1983). The policy underlying proximate cause is that we, as a society, only assign legal responsibility to those actors whose acts are closely connected to the resulting injuries, such that imposition of liability is justified. *Adams Township of Hamilton County. v. Sturdevant,* 570 N.E.2d 87, 90 (Ind.Ct.App.1991), *trans. denied.* Stated another way, proximate cause sets the parameters in which an actor "can expect the law to provide ... protection to his activity." *Galbreath v. Engineering Constr. Corp.,* 149 Ind.App. 347, 273 N.E.2d 121, 127 (1971).

▮▮▮▮ In the present case, we are faced with a preliminary determination by a trial court that child-rearing expenses are available in a claimed "wrongful pregnancy" suit; the medical review panel has not rendered a decision nor has there been a trial on the merits. We believe that child-rearing expenses are available to Seslar if she carries her burden of proof at trial

that these damages are a natural and probable consequence of the healthcare provider's breach. At a minimum, proximate cause requires that the injury would not have occurred but for the defendant's conduct. *Cowe,* 575 N.E.2d at 635. The "but for" test presupposes that absent the defendant's conduct, a plaintiff would have been spared suffering the claimed injury. *Id.* Seslar's claimed injury is that but for the healthcare provider's negligent performance of the sterilization procedure, she would not have conceived the unplanned child and incur the attendant child-rearing expenses.

Seslar is faced with the cost of raising the unplanned child. Child-rearing expenses are the costs Seslar was attempting to avoid by undergoing the sterilization procedure. Seslar sought to prevent conception and the birth of the normal, healthy child resulted from the healthcare provider's breach. The healthcare provider's sole purpose in performing the procedure was to comply with Seslar's wishes to prevent conception. Certainly the costs associated with raising a child are foreseeable and unavoidable. The proximate cause doctrine utilized by our supreme court in *Bader* allows recovery of all damages which flow from the healthcare provider's breach. We believe that child-rearing expenses are a natural and probable consequence of the healthcare provider's breach.

### 3. Other Considerations for Limiting Damages

▮▮▮▮ However, it has been asserted that child-rearing damages should be prohibited because these expenses are too speculative. *See, e.g., Boone v. Mullendore,* 416 So.2d 718, 721–22 (Ala.1982); *Coleman v. Garrison,* 349 A.2d 8, 12 (Del. 1975). We reject this argument. Juries are often called upon to make more complex damage assessments in other medical

malpractice actions such as those involving pain and suffering and mental anguish. Furthermore, damages are often awarded for future care and medical treatment in the personal injury context but are not considered speculative despite the fact that the money may not be needed or utilized for such care and treatment in the future.[12] Moreover, there are means by which child-rearing expenses may be calculated, such as economic demographers, government studies,[13] actuarial and insurance company statistics,[14] and population studies.[15] Such costs are easily understandable and appreciated by the average citizen through their own experience of raising children. Although the damage awards cannot be based upon mere speculation or guesswork, no degree of mathematical certainty is required in the damage calculation. *Weston v. Buckley*, 677 N.E.2d 1089, 1093 (Ind.Ct.App.1997), *trans. denied.* Generally, a jury has liberal discretion in assessing damages where they cannot be calculated with mathematical certainty. *See Dee v. Becker*, 636 N.E.2d 176, 178 (Ind.Ct.App. 1994).[16] Thus, we reject the argument that child-rearing damages are too speculative.[17]

Moreover, several policy arguments[18] have been asserted regarding why this court should draw a line limiting the damages available to a parent in a claim of "wrongful pregnancy" to those directly incident to the pregnancy. It has been argued that the birth of a healthy, normal child cannot constitute a legal harm for which damages are recoverable.[19] *See Taylor v. Kurapati*, 236 Mich.App. 315, 600 N.W.2d 670, 681 (1999)("Simply stated, a child should not be considered a harm to its parents so as to allow recovery for the customary cost of raising the child to majority."); *see also Jackson v. Bumgardner*, 318 N.C. 172, 347 S.E.2d 743, 749 (1986). This is based on the concept that there exists no injury because the benefits of a healthy child substantially outweigh any child-rearing expenses. One jurisdiction has explained that the "bond and affection between child and parent, the pride in a child's achievement, and the comfort, counsel, and society of a child are incalculable benefits, which should not be measured by

12. For example, when the patient has an early death, is cured, or elects not to undergo such treatment.

13. For example, USDA studies. *See http://usda.gov/news/releases/2000/04/0138.*

14. *See, e.g., Jones,* 473 A.2d at 436.

15. *See, e.g., Marciniak,* 450 N.W.2d at 246.

16. Regarding the fear of "runaway jury" verdicts, a trial court has various checks on irrational jury awards such as jury instructions, remittur, and the grant of a new trial.

17. We note that comment a to the Restatement (Second) of Torts § 912 (1979) provides in pertinent part that:

It is desirable also, that there be definiteness of proof of the amount of damages as far as is reasonably possible. It is even more desirable, however, that an injured person not be deprived of substantial compensation merely because he cannot prove with complete certainty the extent of harm he has suffered.

18. Although not contained in his brief, Dr. Chaffee asserted several policy arguments during oral argument.

19. It has been suggested that this view is rooted in a time when society was largely agricultural, and children were actively involved in those activities that ultimately generated an economic benefit for their parents. *See Lovelace Med. Ctr. v. Mendez,* 111 N.M. 336, 805 P.2d 603, 619 (1991). However, "[i]n a post-industrial society, the cost of raising a child usually exceeds the economic benefit, if any, the family derives from the child." *Id.* We agree with the belief expounded by another jurisdiction that in the modern age, a child brings little economic benefit to his parents.

some misplaced attempt to put a specific dollar value on a child's life." *Beardsley v. Wierdsma,* 650 P.2d 288, 293 (Wyo.1982); *see Nanke v. Napier,* 346 N.W.2d 520, 522–23 (Iowa 1984).

■ Moreover, it has been expounded that child-rearing damages should not be recoverable because society places such high value on human life that the birth of a normal, healthy child cannot be a legal wrong for which damages may be recovered. *See, e.g., Schork v. Huber,* 648 S.W.2d 861, 862 (Ky.1983). This concept embodies the belief that the sanctity of human life would be undermined if child-rearing damages are recoverable against a healthcare provider for the negligent performance of a sterilization procedure. One jurisdiction has provided that:

> As a matter of public policy, the birth of a normal and healthy child does not constitute a legal harm for which damages are recoverable. We recognize wrongful death actions because of the great value we place on human life.... The birth of a normal, healthy child may be one of the consequences of a negligently performed sterilization, but we hold that it is not a legal wrong for which damages should or may be awarded.

*Byrd v. Wesley Med. Ctr.,* 237 Kan. 215, 699 P.2d 459, 468 (1985). We believe that a parent's injury is not the birth of her child, but rather is the invasion of her interest in the financial security of her family and the attendant desire to limit her family size, and the deprivation of her right to limit procreation. Also, the sanctity of life is more undermined by a parent being financially unable to provide the basic necessities of life than allowing the recovery of child-rearing expenses. Therefore, we reject these policy arguments for denying child-rearing expenses.

The "emotional bastard" argument has also been asserted as a reason to deny child-rearing expenses. It has been argued the award of child-rearing damages will harm the emotional health of the unplanned child. *See, e.g., Boone,* 416 So.2d at 722; *Cockrum v. Baumgartner,* 95 Ill.2d 193, 69 Ill.Dec. 168, 447 N.E.2d 385, 390 (1983), *cert. denied,* 464 U.S. 846, 104 S.Ct. 149, 78 L.Ed.2d 139 (1983); *Miller v. Johnson,* 231 Va. 177, 343 S.E.2d 301, 307 (1986). Parents who attempt to prove that the burdens of the unplanned child outweigh his "worth" will be encouraged to deny the child's "value" to them. *See, e.g., Wilbur v. Kerr,* 275 Ark. 239, 628 S.W.2d 568, 571 (1982). Upon learning that another is providing his upbringing, the child may feel unwanted, an "emotional bastard." *Wilbur,* 628 S.W.2d at 571.

We refuse to subscribe to this argument for limiting damages. A parent does not seek damages because he or she does not love or want to keep the unplanned child, rather because the healthcare provider's negligence has resulted in the imposition of financial burdens which the parent desired to avoid. *See Jones v. Malinowski,* 299 Md. 257, 473 A.2d 429, 436 (1984). Essentially, a parent seeks child-rearing damages to stabilize the family's finances, not to disparage the worth of the child. Moreover, child-rearing damages are not for the unplanned child or so-called "emotional bastard," "but to replenish the family exchequer so that the new arrival will not deprive the other members of the family of what was planned as their just share of the family income." *Custodio,* 59 Cal. Rptr. at 477. The award of child-rearing expenses acknowledges the costliness of raising a child, as well as the possible disruptive effect of the unplanned child on the finances of the family.

Furthermore, a parent's claim against a healthcare provider may be viewed as an

indication of their emotional bond to the newborn; having initially chosen not to have a child the parents now desire the means to properly raise the child. *See Marciniak v. Lundborg,* 153 Wis.2d 59, 450 N.W.2d 243, 246 (1990). Many children are unplanned but secure in their family's love; the parent's litigation does not indicate rejection of or hostility to the unplanned child, but instead an effort to finance his well-being. *See Flowers v. District of Columbia,* 478 A.2d 1073, 1078 (D.C.1984) (Ferren, J., dissenting). Besides, any psychological harm the child may suffer will surely be less harmful than growing up underfed, ill-clothed, and ill-educated. Therefore, we hold that child-rearing damages enhance the unplanned child's life, not disparage it, and we refuse to prohibit the recovery of such expenses based upon the "emotional bastard" policy argument.

■ Another policy argument for prohibiting the recovery of child-rearing damages is that such awards tend to be very large and out of proportion to the culpability of the healthcare provider. *See, e.g., Fassoulas v. Ramey,* 450 So.2d 822, 824 (Fla.1984); *Beardsley v. Wierdsma,* 650 P.2d 288, 292 (Wyo.1982) This court somewhat adopted this proposition as a reason for prohibiting child-rearing damages in *Garrison.* 486 N.E.2d at 8. In *Garrison,* we stated that the potential enormity of an award of child-rearing expenses would offend the public policy limiting liability imposed under the Medical Malpractice Act (the "Act"). *Id.* We no longer agree with this argument. Indiana Code section 34–18–14–3 places a limit on the amount of damages a plaintiff may recover for injury due to negligent conduct of healthcare providers in rendering their services. The prohibition of child-rearing damages would place an addition limitation of liability in medical malpractice actions not contemplated by the Indiana General Assembly. Our legislature has not expressly limited child-rearing damages and we see no reason to further hamper the recovery of a plaintiff in a medical malpractice action.

We do not dispute the contention that the cost of raising a child is significant. However, we do not believe that the potential size of the damage award is a reasonable basis on which to immunize a healthcare provider from the foreseeable results of his or her negligence. The amount of money needed to raise a child to majority emphasizes the economic impact an unplanned child has upon a family, and this cost should be shifted to the entity more able to bear the cost, the healthcare provider whose negligence resulted in the birth of the unplanned child. Furthermore, concepts of fairness and equity dictate to this court that we not shift the burden of raising the unplanned child to the parent who underwent the medical procedure to avoid conception. In addition, the Act expressly limits the amount of money recovered in a medical malpractice action, regardless of the nature of the damages. Therefore, we refuse to adhere to the policy argument that child-rearing expenses are disproportionate to the healthcare provider's negligence and that the public policy of limiting the liability of healthcare providers embedded in the Act directs this court to prohibit the recovery of child-rearing damages.

Another policy argument against awarding child-rearing damages is that the healthcare provider would be responsible for all of the financial costs of raising the child, while the parents would reap all of the benefits of a lifetime with the child. *See, e.g., Wilbur,* 628 S.W.2d at 571. Essentially, the allowance of child-rearing damages would shift the entire cost of raising the child to the healthcare provider, creating a new category of "surrogate

parent." *See Rieck v. Medical Protective Co.*, 64 Wis.2d 514, 219 N.W.2d 242, 244–45 (1974)(child-rearing damage award would make healthcare provider a "surrogate parent"); *see also Marciniak*, 450 N.W.2d at 246. We do not believe that these damages shift the burden of parenting to the healthcare provider. The child remains the parent's responsibility and it is the parent, not the healthcare provider, who has the responsibility for providing time, energy, discipline, love, and guidance to the unplanned child. In addition, it is the parent, not the healthcare provider, who will incur the stress and heartache which typically accompanies the raising of a child into adulthood. Consequently, we do not find the "surrogate parent" policy argument as a sound basis for prohibiting the recovery of child-rearing damages.

Following our supreme court's guidance in *Bader*, we hold that the costs involved in raising a normal, healthy child conceived subsequent to an allegedly negligent sterilization procedure are recoverable if the parent satisfies all of the elements of negligence. In addition, we hold that no public policy warrants the preclusion of child-rearing expenses from the list of available damages to a successful plaintiff in a medical malpractice action based upon a healthcare provider's negligent performance of a sterilization procedure which ultimately results in the birth of a normal, healthy child.

### III. Mitigation of Damages

"The issue of mitigation of damages is a matter of defense with the burden on the party held liable to respond in damages." *Colonial Disc. Corp. v. Berkhardt*, 435 N.E.2d 65, 67 (Ind.Ct.App. 1982). Generally, the non-liable party must mitigate its damages, but the burden lies with the liable party to prove that the non-liable party has not used reasonable diligence to mitigate its damages. *Id.*

"[T]he principle of mitigation of damages addresses conduct by an injured party that aggravates or increases the party's injuries. The principle does not address the measure of damages resulting from injuries occasioned by the tortfeasor's conduct." *Wiese–GMC, Inc. v. Wells*, 626 N.E.2d 595, 599 (Ind.Ct.App.1993), *trans. denied.* It has been explained that:

> Failure to minimize damages does not bar the remedy, but goes only to the amount of damages recoverable. Otherwise stated, if the act of the injured party does not operate in causing the injury from which all damages ensued, but merely adds to the resulting damages, its only effect is to prevent the recovery of those damages which reasonable care would have prevented.

22 AM.JUR.2D Damages § 497 (1988) (footnotes omitted).

The "avoidable consequence" doctrine has been utilized by several jurisdictions to prohibit a parent's claim for child-rearing damages. *See, e.g., Schork*, 648 S.W.2d at 862; *Sorkin v. Lee*, 78 A.D.2d 180, 434 N.Y.S.2d 300, 301 (N.Y.A.D.1980). This doctrine is rooted in section 918 of the Restatement (Second) of Torts which provides in that:

> (1) Except as stated in Subsection (2), no one injured by the tort of another is not entitled to recover damages for any harm that he could have avoided by the use of reasonable effort or expenditure after the commission of the tort.

> (2) One is not prevented from recovering damages for a particular harm resulting from a tort if the tortfeasor intended the harm or was aware of it and was recklessly disregardful of it, unless the injured person with knowledge of the danger of the harm intentionally or heedlessly failed to protect his own interests.

Restatement (Second) of Torts § 918 (1979). The doctrine of "avoidable consequences" only requires that "reasonable" efforts be made by the plaintiff. *Id.*

The only forms of mitigation available to a parent in a claim of "wrongful pregnancy" are abortion and adoption. It has been asserted that by a parent failing to mitigate, he or she admits that they are accepting all the obligations of raising the child, including the costs such as child-rearing expenses. *See Flowers,* 478 A.2d at 1077 (parents have to make reasonable efforts to mitigate before court considers child-rearing expenses); *see also Kingsbury v. Smith,* 122 N.H. 237, 442 A.2d 1003, 1006 (1982)(limit damages to medical expenses, otherwise place burden of mitigation via abortion or adoption on parents). We believe that the requirement of considering an abortion or placing the child up for adoption is unreasonable.[20] We see no reason why a parent who is threatened by future harm by a tortious act should subject herself to emotional or physical pain of a different kind in order to prevent future harm.

■■■■ Furthermore, the choice of abortion or adoption is a personal and private choice involving deeply religious and moral convictions. *See Marciniak,* 450 N.W.2d at 247. Moreover, requiring mitigation of damages in a claim of "wrongful pregnancy" would affront the United States Supreme Court's protection of procreation decisions under the Constitutional right of privacy.[21] Furthermore, the public policy of this State favors life over abortion. *See Garrison,* 486 N.E.2d at 9; Ind.Code § 16-34-1-1 ("[c]hildbirth is preferred, encouraged, and supported over abortion"). Therefore, we hold that neither abortion nor adoption is an ordinary or reasonable measure in the law relating to mitigation of damages.

■■■■ However, we believe that healthcare provider is entitled to present evidence to limit the amount of the recovery of child-rearing damages by the benefits resulting from the child's birth. According to the Restatement (Second) of Torts:

> When the defendant's tortious conduct has caused harm to the plaintiff or to his property and in so doing has conferred a special benefit to the interest of the plaintiff that was harmed, the value of the benefit conferred is considered in mitigation of damages, to the extent that this is equitable.

Restatement (Second) of Torts § 920 (1979). In simplest terms, the value of any specific benefit conferred on the plaintiff by the defendant's tort must be considered for purposes of mitigation of damages when equitable. Damages are to be reduced only to the extent that the benefit received by the plaintiff is the "same interest" that was harmed by the defendant's

---

**20.** It has been stated that:

Both the interest of the child, and the natural instincts of the parent, make it unreasonable to require parents to submit the child in the womb to abortion, or the child in the crib to adoption. The defendant has no right to insist that the victims of his negligence have the emotional and mental makeup to abort or place the child for adoption.

*Schork v. Huber,* 648 S.W.2d 861, 866–67 (Ky.1983) (Leibson, J., dissenting).

**21.** *See Roe v. Wade,* 410 U.S. at 153, 93 S.Ct. 705(discussing women's right of privacy and the protection of the right to choose an abortion); *Eisenstadt v. Baird,* 405 U.S. at 453–54, 92 S.Ct. 1029 (the choice to prevent conception is a protected by the constitutional right of privacy); *Griswold v. Connecticut,* 381 U.S. at 485–86, 85 S.Ct. 1678 (1965) (right to privacy in making conception decisions).

tort.[22] In addition, benefit can offset the damage only to the extent that it is equitable. Also, a tortfeasor should not be permitted to force a benefit on the plaintiff against the plaintiff's will.[2324]

In *Garrison,* we refused to adopt the rule articulated in section 920 of the Restatement (Second) of Torts whereupon child-rearing costs would be offset by the benefit conferred upon the parent. *Garrison,* 486 N.E.2d at 9. We based our decision on the law relating to a wrongful death action stating that:

> Under Indiana Law, when parents bring a wrongful death action for the death of a child, the jury may not consider the deprivation of happiness, comfort and society of a child or the occurrence of physical or mental suffering or pain by reason of loss of the child. Therefore consideration of these factors would not be permissible in a wrongful pregnancy action to offset the costs of rearing and the balancing would be rendered impossible.

*Id.* (citations omitted). Because we have determined that a claim of "wrongful pregnancy" should be treated no differently than any other medical malpractice action and that traditional principles of negligence apply, we see no reason not to allow a healthcare provider to submit evidence of mitigation to the fact finder pursuant to section 920 of the Restatement (Second) of Torts. However, we refuse to articulate the benefits, if there are in fact any, that may be offset against child-rearing damages recovered as a result of a healthcare provider's negligent performance of a sterilization procedure which ultimately results in the birth of a normal, healthy child. We merely provide that a healthcare provider should not be precluded from presenting this type of mitigation evidence to the fact finder as in any other negligence claim.[25]

### Conclusion

Based on the foregoing, we hold that the trial court properly determined that the costs involved in raising a normal, healthy child conceived subsequent to an allegedly

---

**22.** We note that comment a of section 920 provides in pertinent part that "damages allowable for an interference with a particular interest of the plaintiff may be diminished by the amount to which the same interest has been benefited by the defendant's tortious conduct." Restatement (Second) of Torts § 920 comment a (1979). In addition, comment b provides in pertinent part that "[d]amages resulting from an invasion of one interest of the plaintiff are not diminished by showing that another interest has been benefited." Restatement (Second) of Torts § 920 comment b (1979).

**23.** "The rule stated in this Section is limited by the general principle underlying the assessment of damages in tort cases, which is that an injured person is entitled to be placed as nearly as possible in the position he would have occupied had it not been for the plaintiff's tort. This principle is intended primarily to restrict the injured person's recovery to the harm he actually incurred and not permit the tortfeasor to force a benefit on him against his will." Restatement (Second) of Torts § 920 comment f (1979).

**24.** We note that this rule should not conflict with the general principle that traditional damage measures in tort causes of action are designed to compensate the injured person for the damage sustained by him due to the tort-feasor's actions, and to place the plaintiff in the same financial position in which he would have been had the tort not occurred.

**25.** As noted earlier, several jurisdictions which have allowed the full recovery of child-rearing damages offset by the benefit have been referred by commentators and courts as to have subscribed to the benefit rule. We do not wholeheartedly embrace the benefit rule; rather we merely provide that a healthcare provider should be allowed to present evidence of mitigation to the trial court as any other negligence case when confronted with the imposition of child-rearing damages.

negligent sterilization procedure are recoverable. In addition, we hold that a healthcare provider faced with the award of child-rearing damages should be permitted to produce evidence of mitigation as in any other damage award in a negligence action.

Affirmed.

DARDEN, J., and RILEY, J., concur.